BRENT NEWELL, CA Bar No. 210,312
ALEGRÍA DE LA CRUZ, CA Bar No. 229,713
INGRID BROSTROM, CA Bar No. 245,829
CENTER ON RACE, POVERTY & THE ENVIRONMENT
47 Kearny Street, Suite 804
San Francisco, CA 94108
Telephone:     (415) 346-4179
Fax:              (415) 346-8723
Email:            bnewell@crpe-ej.org

CHRISTOPHER WINTER, OR Bar No. 984,355
*Pro hac vice application pending*
CRAG LAW CENTER
917 S.W. Oak, Suite 417
Portland, OR 97205
Telephone:     (503) 525-2725
Fax:              (503) 296-5454
Email:            chris@crag.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| PADRES HACIA UNA VIDA MEJOR, an unincorporated association, and EL PUEBLO PARA EL AIRE Y AGUA LIMPIO, an unincorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>LISA P. JACKSON, in her official capacity as Administrator of the U.S. Environmental Protection Agency, and U.S. ENVIRONMENTAL PROTECTION AGENCY and<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>(Administrative Procedure Act) |

# INTRODUCTION

1. This is a civil action for declaratory and injunctive relief. Plaintiffs, Padres Hacia una Vida Mejor and El Pueblo para el Aire y Agua Limpio (collectively "Padres"), challenge the failure of the Defendants Lisa P. Jackson and the U.S. Environmental Protection Agency (collectively "EPA") to act within a legally mandated period.

2. Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, requires agencies that distribute federal funds to issue regulations to prevent discrimination by the recipients of those funds. EPA's implementing regulations, codified at 40 C.F.R. Part 7, establish a process whereby parties may file an administrative complaint alleging that a recipient of EPA funds has used those funds in a discriminatory manner. EPA's Title VI regulations explicitly require EPA, upon accepting a complaint, to reach a preliminary decision within 180 days. This case involves EPA's failure to reach a preliminary decision on Padres' Title VI complaint despite the passage of over fifteen years since EPA accepted the complaint.

3. On or about December 12, 1994, Padres filed a Title VI complaint with the EPA Office of Civil Rights ("OCR") alleging violations of Title VI of the Civil Rights Act of 1964 by the California Department of Toxic Substances Control and other California state and local government agencies that permit and oversee the only three toxic waste dumps in California. All three toxic waste dumps are located in rural, low-income, Latino communities who disproportionately bear the burden of toxic waste disposal for all of California.

4. EPA initially failed to accept, reject, or refer the complaint within 25 days of receipt, as required by EPA's regulations implementing Title VI. On July 18, 1995, EPA accepted the complaint, 218 days after Padres filed the Complaint. The implementing regulations also require EPA to issue preliminary findings within 180 days of accepting the complaint for investigation. EPA has violated that deadline, and continues to violate that deadline. Despite the passage of over fifteen years since EPA accepted the complaint, EPA has yet to make those preliminary findings.

5. EPA's failure to comply with its own regulations for processing Title VI

COMPLAINT FOR INJUNCTIVE  PAGE - 1 -
AND DECLARATORY RELIEF

complaints is part of a pattern and practice whereby EPA consistently (1) fails to timely accept, reject or refer complaints; and (2) fails to timely issue preliminary findings as required by the regulations in 40 C.F.R. Part 7.

6. Through this civil action, Padres respectfully requests: (1) a declaratory judgment that the EPA has unlawfully withheld legally mandated agency action in violation of the APA, 5 U.S.C. § 702 and 706(1); (2) a prospective injunction ordering the EPA to conduct and complete the investigation of Padres' current and any future Title VI complaints in accordance with the EPA's complaint investigation regulations codified at 40 C.F.R. §§ 7.115 and 7.120; (3) that the Court retain jurisdiction to enforce the terms of the injunction; and (4) such further just, proper and equitable relief.

7. Plaintiff also seeks an award of costs and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (2005).

**JURSIDICTION AND VENUE**

8. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1346 because this action involves the United States as a defendant and arises under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*. An actual and justiciable controversy now exists between Padres and EPA, and the requested relief is proper under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701-706.

9. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because the cause of action arose within the Eastern District of California and Padres' members reside within that district. Assignment to the Fresno Division is appropriate pursuant to Local Rule 120(d) because members of Padres Hacia una Vida Mejor reside in Kern County and members of El Pueblo para el Aire y Agua Limpio reside in Kings County.

**PARTIES**

10. Padres Hacia una Vida Mejor is an unincorporated association whose members reside in or near Buttonwillow, California, or used to reside in Buttonwillow at the time of the complaint and now reside elsewhere in Kern County. Members work, raise their families, and recreate in Buttonwillow and nearby in Kern County. The mission of Padres

Hacia una Vida Mejor is to inform, involve, and organize the Buttonwillow community for social and environmental justice.

11.     Buttonwillow hosts one of the three permitted Class I Toxic Waste Dumps in California.  At the time Padres filed their Title VI Complaint in 1994, Laidlaw Environmental Services (Lokern), Inc., a wholly owned subsidiary of Laidlaw, Inc., owned and operated the Lokern toxic waste dump, located 8 miles west of Buttonwillow.  Now, the dump is owned and operated by Clean Harbors, Inc.

12.     El Pueblo para el Aire y Agua Limpio is an unincorporated association whose members reside in or near Kettleman City, California.  Members work, raise their families, and recreate in Kettleman City or nearby in Kings County.  The mission of El Pueblo para el Aire y Agua Limpio is to protect the health of Kettleman City residents and preserve and enhance the environment in Kettleman City and other farmworker communities.

13.     Kettleman City hosts one of the three permitted Class I Toxic Waste Dumps in California.  The Kettleman Hills Facility is located 3.5 miles southwest of Kettleman City.  At the time Padres filed their Title VI Complaint in 1994, Chemical Waste Management, Inc., a wholly owned subsidiary of Waste Management, Inc., owned and operated the Kettleman Hills Facility.  Chemical Waste Management, Inc. continues to own and operate the Kettleman Hills Facility.

14.     Padres has an ongoing interest in protection against discrimination by the California Department of Toxic Substances Control and other state and local governmental agencies that receive and distribute federal funding.

15.     EPA's failure to timely and properly resolve Padres' Title VI complaint has injured and continues to injure the members of Padres Hacia una Vida Mejor.  At the time Padres filed the Title VI complaint, Laidlaw had proposed to vastly expand its capacity.  That proposal received approval from the California Department of Toxic Substances Control and other state and local governmental entities.  In the fifteen years that EPA has refused to act on the Title VI complaint, the Buttonwillow toxic waste dump has accepted massive amounts of toxic waste and radioactive waste.  Members are concerned about the effects of

radioactive and toxic waste disposed at the Buttonwillow toxic waste dump, and trucked through their community, on themselves, their families, and neighbors.  Members are also concerned about air pollution emitted by the dump and by diesel trucks transporting toxic waste to the dump, some of which travel through Butttonwillow on Highway 58.  In addition, the toxic waste dump contributes to the cumulative impact of the San Joaquin Valley's notorious bad air quality, which violates federal National Ambient Air Quality Standards and is classified as an extreme ozone nonattainment area and a fine particulate matter (PM2.5) nonattainment area.  Finally, members are injured by the social stigma of a nearby toxic waste dump, which negatively affects their psychological well-being and the economic health of their community, which experiences depressed property values due to the close proximity of the Buttonwillow toxic waste dump.

16. EPA's failure to timely and properly resolve Padres' Title VI complaint has injured and continues to injure members of El Pueblo para el Aire y Agua Limpio.  The EPA-issued PCB permit for the Kettleman Hills Facility has since expired, and EPA has allowed the Facility to continue to receive PCBs.  EPA continues to process the PCB permit renewal at the same time that it has refused to take action on the Title VI complaint.  More recently, Chemical Waste Management has received approval from Kings County and the San Joaquin Valley Air Pollution Control District to significantly expand the Kettleman Hills Facility's capacity to accept more toxic waste.  The California Department of Toxic Substances Control is currently processing the permit application to allow this expansion.  In the fifteen years that EPA has refused to act on the Title VI complaint, the Kettleman Hills Facility has accepted massive amounts of toxic waste.  EPA has issued multiple Notices of Violations to Chemical Waste Management for the illegal handling and disposal of PCBs, as well as improper monitoring, including deficient laboratory procedures and protocols.  Members are concerned about the effects of toxic waste and PCBs disposed at the toxic waste dump, and trucked through their community, on themselves, their families, and neighbors.  Since 2007, fourteen babies have been born with birth defects, including cleft palate and various heart and brain defects, in Kettleman City and several have died.  Members are also concerned

about air pollution emitted by the dump and by diesel trucks transporting toxic waste to the dump, some of which travel through Kettleman City on Highway 41.  In addition, the toxic waste dump contributes to the cumulative impact of the San Joaquin Valley's notorious bad air quality, which violates federal National Ambient Air Quality Standards and is classified as an extreme ozone nonattainment area and a fine particulate matter (PM2.5) nonattainment area.  Finally, members are injured by the social stigma of a nearby toxic waste dump, which negatively affects their psychological well-being and the economic health of their community, which experiences depressed property values due to the close proximity of the Kettleman Hills Facility.

17. EPA's failure to properly investigate and resolve Padres' Title VI complaint exacerbates these injuries.  Padres' interests have been and will be adversely affected and irreparably harmed if EPA continues to fail to act on Padres Title VI complaint.  These are actual, concrete injuries caused by EPA's failure to comply with mandatory duties under EPA's anti-discrimination regulations and the APA.  A declaration that EPA has violated 40 C.F.R. §§ 7.115 and 7.120 and an order requiring EPA to comply with its regulations would redress these injuries.

18. Defendant LISA P. JACKSON is sued in her official capacity as the Administrator of the EPA.  She is charged in that role with taking various actions to implement and enforce Title VI of the Civil Rights Act of 1964, including the actions sought in this Complaint.

19. Defendant ENVIRONMENTAL PROTECTION AGENCY is an agency of the United States government charged with, *inter alia*, implementing Title VI of the Civil Rights Act of 1964.

20. The EPA Office of Civil Rights ("OCR") is responsible for responding to complaints and investigating violations of Title VI.

21. Raphael DeLeon is the Director of the OCR.

22. Helena Wooden-Aguilar is the Assistant Director of the OCR, and Thomas Walker is the OCR Case Manager assigned to Padres' Title VI complaint.

## LEGAL BACKGROUND AND THE TITLE VI PROCESS

23. Title VI of the Civil Rights Act prohibits discrimination by institutions that utilize federal funds. 42 U.S.C. § 2000d. Section 601 provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. *Id*. Section 602 authorizes federal agencies that provide federal funding assistance to issue regulations to effectuate the anti-discrimination provisions of Title VI. *Id*. at § 2000d-1. Specifically, Section 602 requires agencies to create a regulatory framework for processing complaints of racial discrimination. *Id*.

24. Pursuant to the requirements of Title VI, the EPA promulgated regulations prohibiting EPA funding recipients from engaging in discrimination. *See* 40 C.F.R. §§ 7.30 and 7.35.

25. The EPA, through the OCR, is responsible for investigating discrimination and retaliation complaints against EPA funding recipients for violations of Title VI. 40 C.F.R. §§ 7.120 and 7.115. The OCR shall "promptly investigate all complaints filed under this section." 40 C.F.R. § 7.120.

26. Once a complaint has been filed with EPA, the OCR then has five (5) calendar days to notify the complainant and the recipient of the OCR's receipt of the complaint. 40 C.F.R. § 7.120(c). After acknowledging receipt of a complaint, the OCR must immediately initiate complaint processing procedures. 40 C.F.R. § 7.120(d). Within twenty (20) days after the OCR acknowledges the complaint, the OCR will review the complaint for acceptance, rejection, or referral to the appropriate Federal agency. 40 C.F.R. § 7.120(d)(1)(i).

27. If the complaint is accepted, the OCR will notify the complainant, the EPA Award Official, and the recipient of federal financial assistance. 40 C.F.R. § 7.120(d)(1)(ii). The recipient then has the opportunity within thirty (30) days to submit a response to the OCR addressing the allegations in the complaint. 40 C.F.R. § 7.120(d)(1)(iii). Within 180 days of the start of the complaint investigation, OCR will notify the recipient in writing by

certified mail, return receipt requested, of preliminary findings, and recommendations for voluntary compliance. *Id.* at § 7.115(c).

28. After receiving the notice of the preliminary finding of noncompliance in, the recipient may (1) agree to the OCR's recommendations; or (2) submit a written response sufficient to demonstrate that the preliminary findings are incorrect, or that compliance may be achieved through steps other than those recommended by OCR. 40 C.F.R. § 7.115(d). If the recipient does not take one of these actions within fifty (50) calendar days after receiving this preliminary notice, the OCR shall, within fourteen (14) calendar days, send a formal written determination of noncompliance to the recipient and copies to the award official and the Attorney General. 40 C.F.R. § 7.115(d)(2).

29. In this civil action, Padres alleges that EPA has failed to comply with its 180-day deadline for issuing preliminary findings and recommendation for voluntary compliance.

## FACTUAL ALLEGATIONS

30. The EPA distributes and has distributed federal financial assistance to the California Department of Toxic Substances Control, the California Environmental Protection Agency, the State Office of Permit Assistance, Kern County, Kings County, Imperial County, the San Joaquin Valley Air Pollution Control District, Imperial County Air Pollution Control District, the Central Valley Regional Water Quality Control Board, and the Colorado River Basin Regional Water Quality Control Board (collectively "California agencies"). Those recipients of federal financial assistance are therefore subject to the restrictions of Title VI and EPA's corresponding anti-discrimination regulations.

31. Padres Hacia una Vida Mejor, El Pueblo para el Aire y Agua Limpio, and Concerned Citizens of Westmorland filed a Title VI complaint with the EPA on or about December 12, 1994, alleging discrimination by the California agencies. The California Agencies are responsible for the permitting and oversight of California's three Class I toxic waste dumps. The Title VI complaint also alleged discrimination by the owners of California's toxic waste dumps: Chemical Waste Management, Inc. and Laidlaw, Inc. (collectively "Toxic Waste Dump Owners"). Specifically, the complaint alleged that the

1 California agencies and the Toxic Waste Dump Owners discriminated against Padres in the
2 siting, permitting, expansion, and operation of California's three Class I toxic waste dumps,
3 all of which are located in low-income, rural, Latino communities. EPA assigned the
4 complaint File No. 01R-95-R9.

5     32. Buttonwillow is located in Kern County, California. According to the 2000
6 Census, Buttonwillow has 1,594 residents, 66% of whom are Hispanic or Latino. In
7 Buttonwillow, 23.5% of families live below the poverty level and approximately 65% of
8 families speak a language other than English at home.

9     33. Kettleman City is located in Kings County, California. According to the 2000
10 Census, Kettleman City has 828 residents, 88% of whom are Hispanic or Latino. In
11 Kettleman City, 23.5% of families live below the poverty level and approximately 75% of
12 families speak a language other than English at home.

13     34. Westmorland is located in Imperial County, California. According to the
14 2000 Census, Westmorland has 2,131 residents, 82.2% of whom are Hispanic or Latino. In
15 Westmorland, 27.3% of families live below the poverty level and approximately 75% of
16 families speak a language other than English at home.

17     35. According to the 2000 Census, California has 33,871,648 residents, 32.4% of
18 whom are Hispanic or Latino. In California, 10.6% of families live below the poverty level
19 and approximately 39% of families speak a language other than English at home.

20     36. Concerned Citizens of Westmorland is an unincorporated association whose
21 members live in and near Westmorland, in Imperial County. At the time the complaint was
22 filed, Laidlaw Environmental Services (Imperial Valley), Inc., a wholly owned subsidiary of
23 Laidlaw, Inc., owned and operated the toxic waste dump in Westmorland.

24     37. By letter dated July 18, 1995, EPA notified Padres that EPA had accepted the
25 Title VI complaint for investigation with respect to the allegations against the California
26 Department of Toxic Substances Control and the Imperial County Air Pollution Control
27 District. EPA rejected for investigation allegations against the California Environmental
28 Protection Agency, the State Office of Permit Assistance, Kern County, Kings County,

Imperial County, the San Joaquin Valley Air Pollution Control District, the Central Valley Regional Water Quality Control Board, the Colorado River Basin Regional Water Quality Control Board, Chemical Waste Management, Inc., and Laidlaw, Inc.

38. On October 14, 1996, Padres and fifteen other Title VI complainants sent a letter to Carol Browner, EPA Administrator, to raise the issue of EPA's failure to adhere to its regulatory deadlines to process Title VI complaints. Of the sixteen complaints referenced in the letter, eleven had been accepted for investigation and five had yet to be accepted, rejected, or referred for investigation. EPA failed to adhere to its regulatory deadlines with respect to all sixteen Title VI complaints.

39. On December 9, 1996, Administrator Browner responded, agreeing that "the Agency needs to improve the timeliness of its decisional process, including the process of accepting or rejecting complaints soon after they are filed." Administrator Browner informed Padres and the fifteen other Title VI complainants that EPA has taken steps to "enhance the investigation and processing of Title VI complaints to address the very concerns raised in your letter," including increasing staff, establishing a Title VI Workgroup and a Title VI Complaint Task Force to address the Title VI complaint back log.

40. On August 26, 2000, Padres and fifty-eight other Title VI complainants submitted comments on EPA's Draft Revised Guidance for Investigating Title VI Administrative Complaints Challenging Permits and Draft Title VI Guidance for EPA Assistance Recipients Administering Environmental Permitting Programs. Of those fifty-nine complaints, forty-one were under consideration or had been accepted for investigation. Eighteen had been rejected on procedural or other technical grounds.

41. Between 2006 and 2007, EPA failed to process a single Title VI complaint in accordance with its regulatory deadlines. *Rosemere Neighborhood Association v. EPA*, 581 F.3d 1169, 1175 (9th Cir. 2009).

42. According to an inventory of Title VI complaints EPA produced pursuant to a consent decree in *Rosemere Neighborhood Association v. EPA* (hereafter "the inventory"), there are currently thirty-three pending Title VI complaints that have been accepted but EPA

has not made timely preliminary findings and recommendations for voluntary compliance to the recipient for *any* of these complaints.  Of those 33, a majority were accepted for investigation in 2008 or earlier despite the 180 day deadline for issuing preliminary determinations.  Four complaints, including Padres' complaint, were accepted in the 1990s yet languish in administrative purgatory.

43.  According to the inventory, 7 Title VI complaints are pending an EPA decision to accept, reject or refer.  Among those 7 complaints, EPA failed to make a finding to accept, reject, or refer the complaints within 20 days.

44.  By letter dated January 19, 2011, EPA found that, at the time Padres filed the Title VI complaint, the Imperial County Air Pollution Control District was not a recipient of federal financial assistance and dismissed the complaint with respect to that recipient.

45.  On March 21, 2011, Deloitte Consulting, LLP released the Final Report, Evaluation of the EPA Office of Civil Rights (hereafter "Deloitte Report").  Among other findings, the Deloitte Report found that OCR has not adequately adjudicated Title VI Complaints.  The Report found that in only 6% of complaints (15 out of 247), EPA complied with the 20-day period to accept, reject, or refer a complaint.  The Report found that, among other findings, delays in accepting and investigating complaints are the result of (1) the complexity in determining whether a complaint falls within EPA's jurisdiction; (2) a lack of EPA methods to conduct needed analyses; (3) a lack of standard operating procedures; and (4) a lack of supporting resources from EPA program and regional staff who have no incentive to prioritize Title VI investigations above their own program and region-related work.

46.  To date, EPA has resolved only one Title VI complaint on the merits, *Saint Francis Prayer Center v. Michigan Department of Natural Resources*, EPA File No. 5R-98-R5.  On October 30, 1998, EPA found no adverse impact caused by air pollution from a steel mill in Flint, Michigan and dismissed the complaint.

# FIRST CAUSE OF ACTION

## AGENCY ACTION UNLAFULLY WITHHELD AND UNREASONABLY DELAYED

## ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 702 and 706(1))

47.   Padres incorporates by reference all preceding paragraphs.

48.   The Administrative Procedure Act directs courts to compel agency action unlawfully withheld.  5 U.S.C. § 706(1).

49.   EPA has violated, and continues to violate, 40 C.F.R. § 7.115(c) because EPA failed to issue preliminary findings and recommendations for voluntary compliance to the recipient in response to Padres' Title VI complaint within 180 days of EPA's initiation of the complaint investigation.

50.   EPA's violations are on-going and will continue unless remedied by order of the Court.

51.   EPA's on-going violation of 40 C.F.R. § 7.115(c) alleged herein is part of a pattern and practice of illegal agency conduct.  EPA has consistently and overwhelmingly failed to accept, reject, or refer Title VI complaints within 20 days and consistently and overwhelmingly failed to issue preliminary findings and recommendations for voluntary compliance within 180 days, as required by 40 C.F.R. §§ 7.120(d)(1)(i) and 7.115(c).

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A.   Declare that EPA's failure to comply with the deadline set forth in 40 C.F.R. § 7.115, requiring EPA to issue preliminary findings and recommendations for voluntary compliance to the recipient within 180 days of initiating the investigation, constitutes agency action unlawfully withheld and/or unreasonably delayed under the Administrative Procedure Act;

B.    Issue an injunction compelling EPA to process Padres' current and any future Title VI complaints in compliance with the timelines set forth in 40 C.F.R. § 7.115;

C.   Retain jurisdiction to enforce the terms of the injunction;

D.   Award Padres costs of suit, including expenses, expert witness fees, and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

E. Grant Padres such further relief the Court deems just and proper.

DATED this 1st day of June, 2011.          Respectfully submitted,

CENTER ON RACE, POVERTY & THE ENVIRONMENT


/s/ Brent Newell
Brent Newell
Attorney for Plaintiffs
47 Kearny Street, Suite 804
San Francisco, CA 94108
Telephone:     (415) 346-4179
Fax:               (415) 346-8723


/s/ Christopher Winter
Christopher Winter
*Pro hac vice application pending*
CRAG LAW CENTER
917 S.W. Oak, Suite 417
Portland, OR 97205
Telephone:     (503) 525-2725
Fax:               (503) 296-5454