1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PADRES HACIA UNA VIDA MEJOR,** an unincorporated association, and **EL PUEBLO PARA EL AIRE Y AGUA LIMPIO,** an unincorporated association, | **1:11-cv-1094  AWI DLB** |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **LISA P. JACKSON,** in her official capacity as Administrator of the U.S. Environmental Protection Agency, and **U.S. ENVIRONMENTAL PROTECTION AGENCY,** | (Doc. No. 11) |
| Defendants. | |

This is a case brought by Plaintiffs under 5 U.S.C. § 706(1) of the Administrative Procedures Act ("APA").  Plaintiffs contend that Defendants have failed to act on a Title VI complaint of discrimination that was filed in 1994.  Defendants now move under Rules 12(b)(1) and 12(b)(6) to dismiss this case.  For the reasons that follow, the Court will deny the motions.

**BACKGROUND**[1]

From the Complaint, Plaintiffs are associations whose members reside in Buttonwillow, California and Kettleman City, California.  The populations of Buttonwillow and Kettleman City are majority Latino, and a substantial portion of the populations of these cities are below the

---

[1] The Court is required to accept as true all factual allegations in the FAC when resolving a Rule 12(b)(6) motion.  See Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008).

1   poverty line.  Two of California's Class I toxic waste disposal sites are located in these cities.

2   The U.S. Environmental Protection Agency ("EPA") has distributed federal financial assistance

3   to ten California agencies ("10 Agencies").  The 10 Agencies are responsible for the permitting

4   and oversight of the Class I toxic waste disposal dumps in Buttonwillow and Kettleman City.

5        On December 12, 1994, Plaintiffs filed with the EPA a Title VI discrimination complaint

6   against the 10 Agencies and the owners of the two toxic waste disposal dumps (hereinafter the

7   "Owners").[2]  The Title VI complaint alleges that the Owners and the 10 Agencies discriminated

8   against Plaintiffs in the siting, permitting, expansion, and operation of the toxic waste dumps.

9        On July 18, 1995, EPA notified Plaintiffs that it had accepted their Title VI complaint for

10   investigation.

11        On October 14, 1996, Plaintiffs sent a letter to then EPA Administrator, Carol Browner.[3]

12   The letter raised the issue of EPA's failure to adhere to regulatory deadlines with respect to

13   processing Title VI complaints.  In pertinent part, the letter stated, "The EPA should have

14   completed its preliminary investigation by mid-January of 1996.  The EPA missed its deadline by

15   eight months.  As of October 1, 1996, the EPA was still evaluating the responses to [Plaintiffs']

16   complaint and had not formulated nor sent the recipients its preliminary findings and

17   recommendations for achieving voluntary compliance, in violation of 40 C.F.R. § 7.115(c)(1)."

18   Court's Docket Doc. No. 11-3 at p. 11.[4]  Further, the letter warned: "We are all well aware that

19   there are remedies under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, available

20   to us if EPA continues to fail to meet its statutory and regulatory obligations."  Id. at p. 1.  The

21   letter included a "remedies" section that recommended that the EPA take 10 steps to remedy the

22   failure to process Title VI complaints.  See id. at pp. 16-17.

23        On December 9, 1996, EPA responded to the October 1996 letter.  EPA agreed that it

24

25   [2]A third group, who were based in Westmoreland, California (which is the location of the third Class I toxic

26   waste dump) was part of the Title VI complaint.  Because the third group is not a part of this lawsuit, the Court will focus on the allegations that directly deal with the two named Plaintiffs.

27   [3]The letter referenced a total of 16 Title VI complaints, including the Title VI complaints filed by Plaintiffs.

28   [4]This letter is referenced and described in the Complaint at ¶ 38, and thus may be considered in resolving the Rule 12(b)(6) motion.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

needed to improve the timeliness of its decisional process, and informed Plaintiffs that it had taken steps to enhance the investigation and processing of Title VI complaints so as to address the concerns raised in the letter.  The steps included increasing staff and establishing a Title VI work group and task force.

On August 26, 2000, Plaintiffs (as well as 58 other Title VI complainants) submitted comments on the EPA's Draft Revised Guidance for Investigating Title VI Administrative Complaints.  Of those complainants, 41 had complaints under consideration or accepted for investigation, and 18 had been rejected on procedural or technical grounds.

Between 2006 and 2007, EPA failed to process a single Title VI complaint in accordance with its regulatory guidelines.

On January 19, 2011, EPA found that, at the time Plaintiffs filed their Title VI complaint, Imperial County Air Pollution Control District was not a recipient of federal financial assistance.  Accordingly, the complaints against that agency were dismissed.

On March 21, 2011, Deloitte Consulting released a final report (the "Deloitte Report") that evaluated the EPA's Office of Civil Rights.  The Deloitte Report found that EPA had not adequately adjudicated Title VI complaints.  The report found that delays in accepting and investigating complaints by the Office of Civil Rights are the result of: (1) the complexity of determining whether a complaint is under EPA's jurisdiction; (2) a lack of EPA methods to conduct needed analysis; (3) a lack of standard operating procedures; and (4) a lack of supporting resources from EPA and staff.

To date, EPA has resolved only one Title VI complaint on the merits.  On October 30, 2008, EPA found no adverse impact relating to a steel mill in Flint, Michigan.

On June 30, 2011, Plaintiffs filed this lawsuit.  The Complaint contains a single cause of action.  Plaintiffs seek relief under 5 U.S.C. § 706(1).  Plaintiffs allege that EPA has violated, and continues to violate, 40 C.F.R. § 7.115(c)(1) because it failed to issue preliminary findings and recommendations for voluntary compliance in response to Plaintiffs' Title VI complaint within 180 days of EPA's initiation of investigation.  Plaintiffs seeks declaratory and injunctive relief so that EPA will comply with 40 C.F.R. § 7.115.

## LEGAL FRAMEWORK

### *Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take judicial notice of public records outside the pleadings, review materials which are properly submitted as part of the complaint, and review documents that are incorporated by reference in

the Complaint if no party questions their authenticity.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a Rule 12(b)(6) motion is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted where amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).  While factual allegations raised in an opposition may not defeat a motion to dismiss, the court may consider such facts in deciding whether to dismiss a claim with or without prejudice.  See  Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).


**DEFENDANTS' MOTIONS**

**I.      Rule 12(b)(1) Motion**

        Defendants argue that Plaintiffs have violated 28 U.S.C. § 2401(a)'s six year statute of limitation, and that this violation deprives the Court of jurisdiction.  However, the Ninth Circuit has expressly held that § 2401(a) is "non-jurisdictional."  Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 770-72 (9th Cir. 1997).

        Defendants acknowledge *Cedars-Sinai*, but argue that the Supreme Court's decision and rationale in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) indicate that *Cedars-Sinai* is no longer good law.  The Court cannot agree.  *John R.* dealt with 28 U.S.C. § 2501.  Because *John R.* dealt with § 2501, it does not expressly overrule *Cedars-Sinai*.  Further, while other courts have found § 2401 is jurisdictional in part because of *John R.*, e.g. West Virginia Highlands Conservancy v. Johnson, 540 F.Supp.2d 125, 143 (D. D.C. 2008), and a panel of the Ninth Circuit has indicated that *Cedars-Sinai* may no longer be good law, see Aloe Vera of Am., Inc. v. United States, 580 F.3d 867, 872 (9th Cir. 2009) ("To the extent that *Cedars-Sinai* is still valid after *John R. Sands* . . . the holding of *Cedars-Sinai* does not dictate the jurisdictional nature of § 7431(d)."), the Ninth Circuit has yet to actually overrule *Cedars-Sinai*.  As such, "[i]n the Ninth Circuit, *Cedars-Sinai* still is controlling law . . . ."  Rancheria v.

1  <u>Salazar</u>, 2010 U.S. Dist. LEXIS 23317, *15 (N.D. Cal. Feb. 23, 2010).  Until either the U.S.

2  Supreme Court or the Ninth Circuit holds that *John R. Sands*'s rationale applies equally to

3  § 2401(a), this Court must follow *Cedars-Sinai*.

4  Because *Cedars-Sinai* holds that 28 U.S.C. § 2401(a) is not jurisdictional, Defendants'

5  Rule 12(b)(1) motion will be denied.

6

7  **II.      Rule 12(b)(6) Motion**

8  *Defendants' Arguments*

9  Defendants argue that the discrete duty at issue, 40 C.F.R. § 7.115(c)(1), imposes an

10  obligation on the EPA to issue preliminary findings within 180 days from the start of the

11  complaint investigation.  For purposes of this motion, EPA concedes that no findings have been

12  issued.  As demonstrated by the October 1996 letter, Plaintiffs were aware that Defendants had

13  not met the 180 day deadline, and were also aware of their APA remedies.  However, pursuant to

14  28 U.S.C. § 2401(a) Plaintiffs had six years to bring an APA lawsuit.  Since this lawsuit was

15  filed in June 2011, it is barred by § 2401(a).

16  In reply, Defendants contend that none of the theories advanced by Plaintiffs can make

17  this lawsuit timely.  The Ninth Circuit has rejected the continuing violations doctrine in the

18  context of the APA.  Further, the duty at issue is not one that every day EPA does not act, it

19  creates a new wrong.  There is only one discrete violation at issue.  Finally, Plaintiffs have not

20  alleged, nor does their opposition establish, the six elements necessary to apply equitable

21  estoppel against the government.

22  *Plaintiffs' Opposition*

23  Plaintiffs argue that Defendants' motion should be denied because EPA's unlawfully

24  withheld action violates its duty to issue preliminary findings, and every day that it does not issue

25  findings is a repetitive discrete violation.  Further, the continuing violations doctrine allows for

26  relief concerning violations that occurred outside the limitations period.

27  Statutes of limitations are grounded in equity and seek to avoid the litigation of stale

28  claims.  The approach of the D.C. Circuit should be followed, and that approach refuses to hold

§ 706(1) relief as time barred when a government agency fails to meet a statutory deadline.  This approach in part recognizes that the focus of a § 706(1) suit is on what an agency has failed to do, not what an agency has already done, and treats each day that an agency fails to act as a discrete, single violation.  This approach has been followed by many courts and should be followed here.  The EPA has refused and is refusing to follow its continuing duty under 40 C.F.R. § 7.115(c)(1).

With respect to the continuing violation doctrine, the Ninth Circuit has not applied this doctrine in a published APA case.  The Northern District of California has applied the doctrine in the context of a CERCLA case, as well as in an Anti-Car Theft Improvements Act case.  The doctrine should be applied here so that EPA may no longer avoid its statutory obligations.

Alternatively, Plaintiffs argue that equitable estoppel applies to this case based on EPA's misconduct over the last 16 years.  EPA's actions misled Plaintiffs into believing that it would investigate and resolve their complaint.  Plaintiffs reasonably relied on the December 1996 EPA letter and the June 2000 EPA draft Revised Guidance statement, which said EPA "intends to promptly investigate all Title VI complaints that satisfy the jurisdictional criteria."  Plaintiffs participated fully in the public process by submitting comments, and then patiently waited for EPA to respond to the comments and to resolve their complaint.  However, EPA never issued a Final Guidance, never responded to the comments that were submitted, and failed to follow 40 C.F.R. § 7.115(c)(1).  In 2011, the Deloitte Report showed EPA's long-standing incapacity and indifference to Title VI complaints.  "While it is true that there is no evidence that Browner or anyone else at the EPA intentionally misled [Plaintiffs], the Deloitte Report demonstrates EPA's actions went far beyond mere negligence."  Plaintiffs relied on EPA's repeated assurances over the years that the flaws in the investigatory process were being addressed, which in turn would lead to the processing of Plaintiffs' complaint.  It was not until the Deloitte Report that Plaintiffs realized that this lawsuit must be filed.  Further, the public interest would be furthered because it would force the EPA to resolve a Title VI claims.

*Legal Standard*

1.    APA

In part, the APA permits a reviewing court to "compel agency action unlawfully withheld

1   or unreasonably delayed." 5 U.S.C. § 706(1); Gardner v. United States BLM, 638 F.3d 1217,

2   1221 (9th Cir. 2011). However, "a claim under § 706(1) can proceed only where a plaintiff

3   asserts that an agency failed to take a discrete agency action that it is required to take." Norton v.

4   Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004); Gardner, 638 F.3d at 1221.

5         Although the APA itself contains no specific statute of limitations, 28 U.S.C. § 2401(a)'s

6   general six-year for civil actions applies to challenges brought under the APA. Gros Ventre

7   Tribe v. United States, 469 F.3d 801, 814 n.12 (9th Cir. 2006); Turtle Island Restoration

8   Network v. United States DOC, 438 F.3d 937, 942-43 (9th Cir. 2006); Wind River Mining Corp.

9   v. United States, 946 F.2d 710, 712-13 (9th Cir. 1991). Section 2401(a) reads in pertinent part,

10  "every civil action commenced against the United States shall be barred unless the complaint is

11  filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). A claim

12  "accrues" when the plaintiff is aware of the wrong and can successfully bring a cause of action,

13  although "actual knowledge" is not necessary. Shiny Rock Mining Corp. v. United States, 906

14  F.2d 1362, 1364 (9th Cir. 1990); see also Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d

15  751, 759 (8th Cir. 2009). The Ninth Circuit has held that § 2401(a) is not jurisdictional, but is

16  procedural and subject to doctrines such as waiver, equitable tolling, and equitable estoppel. See

17  Cedars-Sinai Med. Ctr. v. Shalala, 177 F.3d 1126, 1130 (9th Cir. 1999); Cedars-Sinai Med. Ctr.

18  v. Shalala, 125 F.3d 765, 770-72 (9th Cir. 1997); Nesovic v. United States, 71 F.3d 776, 778 (9th

19  Cir. 1996).

20        2.      Equitable Estoppel

21        Equitable estoppel "focuses primarily on the actions taken by the defendant in preventing

22  a plaintiff from filing suit." Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir.

23  2011); Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000). An estoppel claim

24  "against the United States creates 'a heaving burden' upon the party asserting it." United States

25  v. Omdahl, 104 F.3d 1143, 1146 (9th Cir. 1997). A plaintiff alleging equitable estoppel against

26  the government must plead and prove: (1) knowledge of the true facts by the government; (2)

27  intent to induce reliance or actions giving rise to a belief in that intent; (3) ignorance of the true

28  facts by the relying party; (4) detrimental reliance; (5) affirmative misconduct (not mere

1   negligence) by the government; and (6) a serious injustice out-weighting the damage to the

2   public interest of estopping the government.  See Estate of Amaro, 653 F.3d at 813; Bolt v.

3   United States, 944 F.2d 603, 609 (9th Cir. 1991).  A plaintiff's detrimental reliance must be

4   reasonable.  See Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002); Santa Maria, 202

5   F.3d at 1176.  Further, the "affirmative misconduct" element is more than a mere failure to

6   inform or to assist.  See Meinhold v. United States DOD, 34 F.3d 1469, 1475 (9th Cir. 1994);

7   Lavin v. Marsh, 644 F.2d 1378, 1384 (9th Cir. 1981).  "Affirmative misconduct" requires a

8   plaintiff to show "an affirmative misrepresentation or affirmative concealment of a material fact

9   by the government."  Meinhold, 34 F.3d at 1475; Bolt, 944 F.2d at 609.  "Affirmative

10  misconduct" generally involves "ongoing active misrepresentations or a pervasive pattern of false

11  promises as opposed to an isolated act of providing misinformation."  Purcell v. United States, 1

12  F.3d 932, 940 (9th Cir. 1993).

13          *Discussion*[5]

14          There is no dispute that the § 2401(a) six year statute of limitations applies in general to

15  APA claims.  See Gros Ventre, 469 F.3d at 814 n.12; Wind River, 946 F.2d at 712-13.  There is

16  no dispute that the obligations of 40 C.F.R. § 7.115(c)(1) began once EPA accepted Plaintiffs'

17  complaint in July 1995, and EPA does not dispute that 40 C.F.R. § 7.115(c) creates a discrete,

18  mandatory, agency duty to act.  That regulation mandates that, if the EPA accepts a Title VI

19  complaint, then the EPA shall issue preliminary findings "within 180 days" of the beginning of

20  the complaint investigation.  40 C.F.R. § 7.115(c)(1);[6] Rosemere Neighborhood Ass'n v. United

21  States EPA, 581 F.3d 1169, 1171 (9th Cir. 2009).

22          As to the effect of the § 2401(a) limitations period, the October 1996 letter shows that

23  Plaintiffs believed that they had been injured because the EPA was eight months late in issuing

24

25          [5]All references to "§ 2401(a)" or "§ 706(1)" refer to 28 U.S.C. § 2401(a) or 5 U.S.C. § 706(1),
26  respectively.

27          [6]40 C.F.R. § 7.115(c)(1) reads: "Postreview notice.  (1) Within 180 calendar days from the start of the
    compliance review or complaint investigation, the [Office of Civil Rights] will notify the recipient in writing by
28  certified mail . . ., of: (I) preliminary findings; (ii) recommendations, if any, for achieving voluntary compliance; and
    (iii) recipient's rights to engage in voluntary compliance where appropriate."

9

1  preliminary findings.  The October 1996 letter also shows that Plaintiffs were aware of their

2  remedies under the APA.  Although it appears highly likely that Plaintiffs' claims first accrued in

3  January 1996, the Court will accept for purposes of this motion that Plaintiffs' § 706(1) claim

4  accrued on October 14, 1996.  Cf. Shiny Rocks, 906 F.2d at 1364.  This would otherwise mean

5  that Plaintiffs had until October 2002 to file suit.  Since suit was brought in June 2011, nearly

6  nine years late, application of § 2401(a) would appear to lead to the dismissal of this lawsuit as

7  time barred.  However, as indicated above, Plaintiffs rely on several theories to argue that their

8  case should proceed.

9          1.      Continuing Violations Doctrine

10         Plaintiffs rely on the continuing violations doctrine.  However, "the continuing violations

11  doctrine is not applicable in the context of an APA claim for judicial review."  Hall v. Regional

12  Transp. Comm'n of S. Nev., 362 Fed. Appx. 694, 695 (9th Cir. 2010); San Luis Unit Food

13  Producers v. United States 772 F.Supp.2d 1210, 1228 (E.D. Cal. 2011); Citizens Legal

14  Enforcement & Restoration v. Connor, 762 F.Supp.2d 1214, 1229-30 (S.D. Cal. 2011); Gros

15  Ventre Tribe v. United States, 344 F.Supp.2d 1221, 1229 n.3 (D. Mont. 2003).  Accordingly, the

16  continuing violations doctrine is inapplicable to this case.

17         2.      Equitable Estoppel

18         Plaintiffs contend that equitable estoppel applies because the EPA's representations

19  misled them into believing that investigations would occur.  Plaintiffs rely on the December 1996

20  Browner letter and the process surrounding a proposed Revised Guidance in 2000.  The Court is

21  not convinced.

22         First, there are insufficient allegations of affirmative misconduct.  The December 1996

23  letter by Browner acknowledges receipt of Plaintiffs' letter, states that suggestions are

24  appreciated, some concrete steps (including the hiring of more staff) had occurred, there is an

25  effort to develop standards and guidelines, several factors have contributed to slow response

26  times, a status report on the complaints is included, EPA hopes to learn from past mistakes, EPA

27  has a commitment to ensuring efficient investigation, and Browner is confident that the new

28  steps will lead to improved results.  See Newell Dec. Ex. 1.  As can be seen, this letter simply

speaks of plans to improve and of hopes for better efficiency.  Conspicuously absent are any direct representations about Plaintiffs' claims (absent inclusion of a status report), when those claims will be reviewed, or any assurance that the claims will be reviewed under any timetable. Further, there is no acknowledgment of the threat to sue under § 706(1), nor is there any express attempt to dissuade Plaintiffs from filing suit.  See id.  In other words, there are no affirmative misrepresentations.  Meinhold, 34 F.3d at 1475.  Similarly, there is nothing about the EPA receiving comments about a proposed "Revised Guidance" that amounts to affirmative misconduct.  Inviting comments about the proposed "Revised Guidance" indicates consideration of changes, it does not show that a change will actually happen or that a proposal will actually be adopted.  Plaintiffs' opposition (but not their complaint) does indicate that the proposed Revised Guidance stated that EPA intended to promptly investigate all Title VI complaints that satisfy jurisdictional criteria.  However, by its nature, proposed new guidelines or policies are just that – proposed.  Until the proposed "Revised Guidance" is adopted, it is inoperative and without binding effect.  Moreover, the statement sets no firm timetables, does not expressly attempt to dissuade lawsuits, and does not misrepresent any facts.  Finally, even if there is misinformation in the proposed "Revised Guidance," it was not part of a pervasive pattern of false promises or ongoing misrepresentations, rather, it was in the nature of a single incident, since there were no affirmative misrepresentations in the 1996 Browner letter.  See Purcell, 1 F.3d at 940; cf. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (noting that 2 instances of improper conduct was insufficient to establish a pervasive practice or custom).  At best, the allegations indicate negligence and a failure to act or to assist; they do not show affirmative misconduct.[7]  See Meinhold, 34 F.3d at 1475-76.

Second, there are insufficient allegations that the EPA intended to induce reliance.  Plaintiffs themselves appear to acknowledge the absence of such an intent, or at least an intent to mislead.  See Opposition at 14:12-14.  The content of the Browner letter is a general letter that

_____

[7]Further, the Deloitte Report indicates that the EPA's processing of Title VI complaints left much to be desired.  However, that is conduct separate and apart from the Browner letter and the request for comments in 2000. The conduct identified in the Deloitte Report was not conduct that Plaintiff was aware of or conduct upon which the EPA intended Plaintiffs to rely.

acknowledges frustrations and states that EPA hopes to improve.  However, acknowledging that a problem exists and indicating that reforms are intended does not show an intent to induce reliance.  Also, receiving comments about a proposed Revised Guidance shows consideration of changes.  That the Guidance was apparently not adopted does not mean that EPA intended to induce reliance.

Third, there are insufficient allegations of reasonable reliance.  Plaintiffs were aware of both § 706(1) and the EPA's obligations to issue preliminary findings, as evidenced by Plaintiffs' October 1996 letter to EPA.  At the very best, EPA's conduct may have reasonably caused a delay in filing suit of a few years.  However, the Court sees nothing in the 1996 Browner Letter or in the description of the *proposed* Revised Guidance in 2000 that could reasonably justify waiting 15 years before filing suit.  An indication that the EPA's practices in general might improve says nothing about when they will actually review Plaintiffs' complaint.  Neither the complaint nor the opposition explain why it was reasonable to wait 15 years to file a lawsuit on the basis of an aspirational letter and a vague, non-binding proposed policy/guideline.

Accordingly, equitable estoppel does not apply in this case.

3.    Discrete Violations

Plaintiffs contend that the EPA's conduct amounts to a number of repeated discrete acts.  Under this theory, repeated discrete acts are treated as a series of independent and individual causes of action.  See National Parks Conservation Ass'n v. TVA, 480 F.3d 410, 417 (6th Cir. 2007).  Where there is an on-going, binding duty to perform an act, each day that the agency does not perform that act is a single, discrete violation.  See Institute for Wildlife Prot. v. United States Fish & Wildlife Serv. 2007 U.S. Dist. LEXIS 85197, *15-*16 (D. Ore. Nov. 16, 2007).  In the *Institute for Wildlife Protection* case, the District of Oregon addressed the Fish and Wildlife Service's ("FWS") failure to designate critical habitat for the Oregon chub (a species of fish) within one year of listing the animal as an endangered species.  See id. at *2-*3.  Although six years had elapsed from the one year deadline to designate critical habitat, the District of Oregon found that § 2401(a) did not bar the lawsuit.  See id. at *16-*17.  The District of Oregon found that the on-going failure of the EPA to designate critical habitat constituted a series of discrete

1     violations of a statutory duty.  See id. at *15-*17.  "Because FWS's mandatory, statutory duty to

2     designate critical habitat did not expire in October 1994 when the agency first violated the

3     [Endangered Species Act] or at any time thereafter, the Court concludes [that] each day that FWS

4     does not designate critical habitat for the Oregon chub as required constitutes a single, discrete

5     violation of the statute.  Plaintiff's action, therefore, is timely because it seeks relief for the

6     agency failure to meet its on-going duty."  Id.  Because the District of Oregon found that each

7     day represented a new, discrete failure to meet an on-going duty, it expressly stated that it did not

8     need to address the continuing violations doctrine.  See id. at *16.

9         The Ninth Circuit, however, has not expressly addressed the "discrete violations" theory

10    in the context of § 706(1) and § 2401(a)'s six year statute of limitations.  However, in *Hells*

11    *Canyon Pres. Council v. United States Forest Serv.*, 593 F.3d 923 (9th Cir. 2010), the Ninth

12    Circuit addressed various challenges brought under § 706(1) and § 706(2), including a challenge

13    over the Forest Service's refusal to close part of a trail to motor vehicles.  The Ninth Circuit held

14    that the plaintiff's § 706(2) claim was barred by the § 2401(a) six year limitation period.  See

15    Hells Canyon, 593 F.3d at 932-33.  With respect to the § 706(1) claim, the Ninth Circuit held that

16    the plaintiffs had failed to identify a "discrete act" that the Forest Service was required to take,

17    and that the plaintiffs were impermissibly trying to transform their § 706(2) claim into a claim

18    under § 706(1).  See id. at 933-34.  In reaching its decision, the Ninth Circuit made the following

19    observations:

20           Although, as mentioned above, the Hells Canyon Act and the Wilderness Act
              require the Forest Service to establish the wilderness area boundary and to
21          prohibit unauthorized vehicles within that area, the Forest Service has done
              precisely that. Nothing in either act requires the Forest Service to use any
22          particular topographical feature as the boundary.  Had the Forest Service failed to
              establish a boundary at all, plaintiffs might have a case for § 706(1) review, but
23          we have no basis for compelling the Forest Service to adopt HCPC's preferred
              boundary. Cf. Wilderness Soc'y v. Norton, 434 F.3d 584, 588-89 (D.C. Cir. 2006)
24          (holding that § 706 relief is available, notwithstanding 28 U.S.C. § 2401(a), where
              the agency ignored a statutory deadline).  Because plaintiffs have not identified a
25          "discrete agency action that [the Forest Service] is required to take," they have
              failed to state a claim under § 706(1).

26    Id. at 933.

27         The Court finds the Ninth Circuit's observation about, and citation to, *Wilderness Society*

28

to be significant.  The Ninth Circuit in *Hells Canyon* did not need to address the statute of limitations issue, yet it chose to state that the plaintiff in that case might have had a legitimate § 706(1) case in the face of complete inaction by the agency, and then parenthetically indicated in citation to *Wilderness Society* that § 2401(a) would not have barred the suit.[8]  In the absence of any other binding authority, the Court believes that the Ninth Circuit would permit a § 706(1) challenge based on complete inaction by a federal agency, irrespective of a violation of § 2401(a).  See *Hells Canyon*, 593 F.3d at 933.

It is true that *Wilderness Society* did reference the government's "continuing violations."  See Wilderness Society v. Norton, 434 F.3d 584, 589 (D.C. Cir. 2006).  Specifically, the D.C. Circuit noted that the complaint in that case alleged "continuing violations by the Government."  Id.  Because the plaintiff in that case did "not complain about what the agency has done but rather about what the agency has yet to do, . . . it is unlikely that [the] complaint would be held by this court to be time-barred by [§ 2401(a)]."  Id.  The D.C. Circuit had earlier stated that it "has repeatedly refused to hold that actions seeking relief under [§ 706(1)] to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred if initiated more than six years after an agency fails to meet a statutory deadline."  Id. at 588.

As noted above, the Ninth Circuit in *Hall* rejected the application of the "continuing violations" doctrine in APA cases.  Nevertheless, the Ninth Circuit's characterization of *Wilderness Society* did not use the phrase "continuing violations," rather, it simply characterized *Wilderness Society* as holding that § 706 relief was available irrespective of a § 2401(a) violation.  See Hells Canyon, 593 F.3d at 933.  *Hells Canyon* did not precisely explain which particular aspects of *Wilderness Society* that it agreed.

In the context of an APA case, the Court believes that the rationale of the District of Oregon in *Institute for Wildlife Protection* is consistent with both *Hall* and *Hells Canyon*'s citation to *Wilderness Society*.  As explained above, that rationale would permit a § 706(1)

---

[8]The Court realizes that the relevant language in *Hells Canyon* is arguably dicta.  However, the parties have not cited the Court to any binding authority that is on point.  As this is the closest Ninth Circuit discussion on the issue, the Court cannot ignore *Hells Canyon*.

1  lawsuit, despite an arguable violation of § 2401(a), if there is an on-going duty to perform a

2  discrete agency act, coupled with non-action by the federal agency.  See Institute for Wildlife

3  Prot., 2007 U.S. Dist. LEXIS 85197 at *15-*17.  This rationale characterizes each day's failure

4  to act as a separate violation of an applicable duty to act.  It has the benefit of not applying the

5  continuing violations doctrine, consistent with *Hall*, yet it also permits a § 706(1) lawsuit in the

6  face of complete inaction lasting more than six years, apparently consistent with *Hells Canyon*.

7      As applied to this case, the EPA was under a duty under 40 C.F.R. § 7.115(c)(1) to issue

8  preliminary findings.  See Rosemere, 581 F.3d at 1171.  It is true that those findings were to be

9  submitted within 180 days of beginning the investigation.  However, as in *Institute for Wildlife*

10 *Protection*, there is nothing to indicate that the duty to issue preliminary findings extinguished on

11 day 181.  The obligation of the EPA to issue preliminary findings remains and is on-going.

12 Under the rationale of *Institute for Wildlife Protection*, every day after day 181 represents a

13 separate and discrete failure to issue the preliminary findings.  Because Plaintiffs seek to remedy

14 the EPA's failure to issue preliminary findings in light of an on-going duty to do so, Plaintiff's

15 § 706(1) claim is not barred by § 2401(a).  See Institute for Wildlife Prot., 2007 U.S. Dist.

16 LEXIS 85197 at *15-*17; cf. Hells Canyon, 593 F.3d at 933.  Therefore, dismissal is not

17 appropriate.

18

19                              **CONCLUSION**

20      Defendants move to dismiss Plaintiff's § 706(1) claim under Rules 12(b)(1) and 12(b)(6).

21 Dismissal under Rule 12(b)(1) is not appropriate because the Ninth Circuit case of *Cedars-Sinai*

22 remains the law in this circuit.  Dismissal under Rule 12(b)(6) is not appropriate because, in the

23 context of this APA case, each day that the EPA fails to meet its on-going duty to provide

24 preliminary findings under 40 C.F.R. § 7.115(c)(1) is a separate act, and the EPA to this day has

25 not issued the required preliminary findings.  Therefore, Defendants' motions will be denied.

26      However, the Court believes that the EPA has raised significant and substantial issues of

27 controlling law in both its Rule 12(b)(1) and Rule 12(b)(6) motions.  Under these circumstances,

28 the Court would entertain a motion for an interlocutory appeal under 28 U.S.C. § 1292(b).

## ORDER

Accordingly, IT HEREBY ORDERED that:

1.    Defendant's Rule 12(b)(1) motion is DENIED;

2.    Defendant's Rule 12(b)(6) motion is DENIED; and

3.    Within twenty-one (21) days of service of this order, Defendant shall file either an answer or a motion for interlocutory appeal.[9]

IT IS SO ORDERED.


Dated:    April 5, 2012                      _____

                              CHIEF UNITED STATES DISTRICT JUDGE

---

[9] If Defendant chooses to file a motion for interlocutory appeal, the Court will review the motion and then set an appropriate briefing schedule for an opposition and reply.

16