BRENT NEWELL, CA Bar No. 210,312
INGRID BROSTROM, CA Bar No. 245,829
CENTER ON RACE, POVERTY & THE ENVIRONMENT
47 Kearny Street, Suite 804
San Francisco, CA 94108
Telephone:     (415) 346-4179
Fax:           (415) 346-8723
Email:         bnewell@crpe-ej.org

CHRISTOPHER WINTER, OR Bar No. 984,355
*Via pro hac vice*
CRAG LAW CENTER
917 S.W. Oak, Suite 417
Portland, OR 97205
Telephone:     (503) 525-2725
Fax:           (503) 296-5454
Email:         chris@crag.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| PADRES HACIA UNA VIDA MEJOR, an unincorporated association, and EL PUEBLO PARA EL AIRE Y AGUA LIMPIO, an unincorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>LISA P. JACKSON, in her official capacity as Administrator of the U.S. Environmental Protection Agency, and U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendants. | Case No. 1:11-cv-01094-AWI -DLB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ON MOOTNESS GROUNDS**<br><br>**Date:  November 19, 2012**<br>**Time: 1:30 p.m.**<br>**Courtroom: 2**<br>**Hon. Anthony W. Ishii** |

## I. INTRODUCTION.

After seventeen years of inaction, unsuccessfully attempting to dismiss this case on statute of limitations grounds, and failing to persuade this Court to stay this case to compel EPA action, EPA finally acted on the Title VI administrative complaint filed by Plaintiffs Padres Hacia una Vida Mejor, *et al*. (collectively "Padres").  EPA now seeks to dismiss this case as moot without making any legitimate effort to comply with the Ninth Circuit's holding in *Rosemere Neighborhood Association v. United States Environmental Protection Agency*, 581 F.3d 1169 (9th Cir. 2009) ("*Rosemere*").

EPA advances other arguments regarding the availability of prospective injunctive relief, ripeness, and standing rather than accepting the holding in *Rosemere* and demonstrating mootness either "first, by showing that it is *extremely unlikely* that [Padres] will file another complaint (and thus come before the agency again); or, second, by showing that, even if [Padres] does file such a complaint, the EPA will meet its regulatory deadlines in resolving it."  *Rosemere*, 581 F.3d at 1173 (emphasis added).

The Court should deny EPA's motion because EPA has not attempted to meet its heavy burden to demonstrate mootness.  In particular, EPA has not made any effort to demonstrate that it has corrected its decades-long pattern and practice of unlawful delay administering its Title VI program.  In addition, the Court should deny the Motion because Padres has sufficiently alleged the likelihood of similar violations in the future to confer standing to seek prospective injunctive relief, and because the *Rosemere* Court already rejected EPA's arguments with respect to ripeness and the availability of prospective injunctive relief.

The Court should further grant Padres' concurrently filed Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 because EPA's Motion to Dismiss on Mootness Grounds, absent an effort to meet the *Rosemere* standard, is frivolous.

## II. STATEMENT OF FACTS.

Padres refers the Court to the Background section in the Order Denying Defendants' Motion to Dismiss at 1-3 (Doc. 27).  Without conceding that EPA's August 30, 2012

decision on Padres' Title VI complaint was legally valid and not otherwise arbitrary and capricious, Padres admits that, after more than *seventeen years* since Padres filed the complaint and over *one year* since Padres filed this lawsuit, EPA performed the act that should have occurred not more than *six months* after EPA accepted the complaint on July 18, 1995.

### III.   STATUTORY AND REGULATORY BACKGROUND.

Title VI of the Civil Rights Act prohibits discrimination by institutions that utilize federal funds.  42 U.S.C. § 2000d.  Section 601 provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI.  *Id*. Section 602 authorizes federal agencies that provide federal funding assistance to issue regulations to effectuate the anti-discrimination provisions of Title VI.  *Id*. at § 2000d-1. Specifically, Section 602 requires agencies to create a regulatory framework for processing complaints of racial discrimination.  *Id*.

EPA misleadingly states that "most courts have held that persons alleging discrimination by a recipient of federal funding may sue the recipient under Title VI and obtain relief (but may not sue the federal provider of those funds, *i.e.*, the federal agency)." EPA Br. at 3:17-20.  A victim of discrimination may only enforce Title VI to remedy acts of *intentional* discrimination.  *Alexander v. Sandoval*, 523 U.S. 275, 279-281 (2001).  That victim has no private right of action against a recipient of federal funding to enforce disparate impact regulations promulgated pursuant to Title VI such as EPA's regulations at issue here. *Id*. at 293.

Pursuant to the requirements of Title VI, the EPA promulgated regulations prohibiting EPA funding recipients from engaging in discrimination.  *See* 40 C.F.R. §§ 7.30 and 7.35.  The EPA, through the Office of Civil Rights ("OCR"), is responsible for investigating discrimination and retaliation complaints against EPA funding recipients for violations of Title VI.  40 C.F.R. §§ 7.120 and 7.115.  The OCR shall "promptly investigate all complaints filed under this section."  40 C.F.R. § 7.120.

Once a complaint has been filed with EPA, the OCR then has five (5) calendar days to notify the complainant and the recipient of the OCR's receipt of the complaint. 40 C.F.R. § 7.120(c). After acknowledging receipt of a complaint, the OCR must immediately initiate complaint processing procedures. 40 C.F.R. § 7.120(d). Within twenty (20) days after the OCR acknowledges the complaint, the OCR will review the complaint for acceptance, rejection, or referral to the appropriate Federal agency. 40 C.F.R. § 7.120(d)(1)(i).

If the complaint is accepted, the OCR will notify the complainant, the EPA Award Official, and the recipient of federal financial assistance. 40 C.F.R. § 7.120(d)(1)(ii). The recipient then has the opportunity within thirty (30) days to submit a response to the OCR addressing the allegations in the complaint. 40 C.F.R. § 7.120(d)(1)(iii). Within 180 days of the start of the complaint investigation, OCR will notify the recipient in writing by certified mail, return receipt requested, of preliminary findings and recommendations for voluntary compliance. *Id.* at § 7.115(c).

After receiving the notice of the preliminary finding of noncompliance, the recipient may (1) agree to the OCR's recommendations; or (2) submit a written response sufficient to demonstrate that the preliminary findings are incorrect, or that compliance may be achieved through steps other than those recommended by OCR. 40 C.F.R. § 7.115(d). If the recipient does not take one of these actions within fifty (50) calendar days after receiving this preliminary notice, the OCR shall, within fourteen (14) calendar days, send a formal written determination of noncompliance to the recipient and copies to the award official and the Attorney General. 40 C.F.R. § 7.115(d)(2).

## ARGUMENT

### IV. EPA SUFFERS A HEAVY BURDEN TO DEMONSTRATE MOOTNESS.

The Supreme Court and the Ninth Circuit do not allow EPA's post-complaint compliance to simply moot this case, nor do they place the burden on Padres to demonstrate this Court still has the power to hold EPA accountable. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON MOOTNESS GROUNDS      3

determine the legality of the practice.  If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (2000) (internal citations omitted).  The doctrine of mootness "protects defendants from the maintenance of suit . . .  based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Gwaltney of Smithfield v. Chesapeake Bay Fnd.*, 484 U.S. 49, 66-67 (1987), *citing United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952).

The Court thus applies a stringent standard to determine whether EPA's post-complaint voluntary compliance moots this case and to protect Padres from EPA's conduct.  *Laidlaw*, 528 at 189.  EPA, not Padres, bears a "heavy burden" to demonstrate mootness.  *Id*. at 189.  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *United States v. Concentrated Phosphate Export Assn., Inc*., 393 U.S. 199, 203 (1968).

In a lawsuit such as this filed under the Administrative Procedures Act to compel EPA action on a Title VI complaint, EPA must demonstrate that Padres "will not encounter further regulatory delays in the processing of its complaints."  *Rosemere*, 581 F.3d at 1173.  EPA can meet its burden by demonstrating "first, by showing that it is *extremely unlikely* that [Padres] will file another complaint (and thus come before the agency again); or, second, by showing that, even if [Padres] does file such a complaint, the EPA will meet its regulatory deadlines in resolving it."  *Rosemere*, 581 F.3d at 1173 (emphasis added).[1]

---

[1] EPA relies on *Grand Canyon Trust v. United States Bureau of Reclamation*, 691 F.3d 1008 (9th Cir. 2012) for the proposition that once EPA acted on the Title VI complaint, Padres' case became moot.  EPA Br. at 10:12-13.  That case is inapposite because it involved a substantive challenge to a Biological Opinion for the humpback chub and a superseding Biological Opinion issued by the U.S. Fish & Wildlife Service.  *Grand Canyon Trust v. United States Bureau of Reclamation*, 691 F.3d at 1016-1017.  *Grand Canyon Trust*, therefore, stands for the unremarkable proposition that the Ninth Circuit held, as it had previously, that "the issuance of a superseding BiOp moots issues on appeal relating to the preceding BiOp." *Id.*, *citing Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS ON MOOTNESS GROUNDS         4**

In *Rosemere,* the Ninth Circuit soundly rejected EPA's efforts to avoid judicial accountability for its failure to timely resolve a Title VI civil rights complaint. *See Rosemere*, 581 F.3d at 1169. The Rosemere Neighborhood Association filed a Title VI complaint, which EPA failed to resolve despite the passage of eighteen months after EPA accepted the complaint for investigation. *Rosemere*, 581 F.3d at 1172. Frustrated, the Association filed a lawsuit similar to this case in order to compel a resolution. *Compare id*. *with* Complaint ¶ 48 (Doc. 1). That lawsuit stirred EPA to act and, after EPA denied the Association's Title VI complaint, EPA persuaded the district court to dismiss the lawsuit as moot. *Rosemere*, 581 F.3d at 1172.

The Ninth Circuit reversed, applied the voluntary cessation exception to the mootness doctrine, and held that EPA failed to meet its heavy burden to demonstrate that it was absolutely clear that any further delays would not occur or that the Association would not file another Title VI complaint. *Id*. at 1174-1175. The Ninth Circuit also held that EPA's failure to act on the Association's complaint was far from isolated, part of a "consistent pattern of delay by the EPA," sufficient for the voluntary cessation doctrine to apply. *Id*. at 1175, *citing Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002) and *In re Ctr. for Auto Safety*, 793 F.2d 1346, 1352, (D.C. Cir. 1986). Noting EPA's "pattern of delay," the Ninth Circuit held that the "action should go forward" and that this fact pattern "'begs for an exception to the ordinary rules of mootness.'" *Rosemere*, 581 F.3d at 1175, *quoting Lucien v. Johnson*, 61 F.3d 573, 575 (7th Cir. 1995).

---

1123 (9th Cir. 1997*)*; *Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv*., 56 F.3d 1071 (9th Cir. 1995).

Padres' lawsuit, on the other hand, seeks to compel EPA action under Section 706(1) of the Administrative Procedure Act. As the Ninth Circuit noted in *Rosemere*, "when the relief sought is an order to the delaying agency to 'hurry up,' but the agency acts "to moot [the] case by acting before [the] claim for relief can be decided," such a sequence "begs for an exception to the ordinary rules of mootness." 581 F.3d at 1175 (internal quotations omitted). *Grand Canyon Trust* did not involve a claim for unlawful delay under Section 706(1), nor does the opinion alter the clear burden that applies to EPA here as announced by the Ninth Circuit in *Rosemere*.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS ON MOOTNESS GROUNDS**         5

## V. EPA FAILS TO MEET ITS HEAVY BURDEN TO ESTABLISH MOOTNESS.

Stirred to action after years of dereliction, EPA argues this case is moot without making any effort to meet its burden to show that a future complaint by Padres is extremely unlikely or that EPA will comply with its regulatory deadlines. Instead, EPA attempts to shift the burden to Padres, arguing that Padres must demonstrate standing and ripeness to secure prospective injunctive relief and, assuming this case is already moot, complains that the Court may not provide declaratory relief.

### A. EPA Frivolously Argues that *Rosemere* does not Apply.

Acknowledging that *Rosemere* "bears certain factual similarities to the instant case," EPA Br. at 12:13-14, EPA attempts to distinguish *Rosemere* as procedurally inapposite because, according to EPA, the Ninth Circuit refused to accept EPA's argument that prospective injunctive relief was not available. *Id*. at 13:12 to 14:6, *citing Rosemere*, 581 F.3d at 1172 n.2. It is true that the *Rosemere* Court declined to consider what remedies remained for the Rosemere Neighborhood Association, but the Ninth Circuit expressly rejected EPA's contention, raised again here in EPA's brief at 5:11 to 7:2, that a court lacks jurisdiction under section 706(1) of the Administrative Procedures Act when the recalcitrant agency finally acts. The Ninth Circuit held that where "a court initially has jurisdiction under the APA, a proposition that the EPA does not challenge in this case, the existence of statutory limitations on the remedies that the court may impose does not defeat jurisdiction." *Rosemere*, 581 F.3d at 1172 n.2. "The question of what remedies are available and appropriate is one that we need not and do not address at this time." *Id*. Here too, the question of what relief is appropriate is not properly presented by EPA in a motion to dismiss the entire action as moot.

Whether EPA likes it or not, the Ninth Circuit has already rejected EPA's argument that the Court lacks jurisdiction under the APA. It instead held that EPA suffers a heavy burden to demonstrate that Padres "will not encounter further regulatory delays in the processing of its complaints." *Rosemere*, 581 F.3d at 1173. In this case, EPA parrots the same argument that the Ninth Circuit rejected, while ignoring EPA's clear burden and

standard announced by that court.

EPA also tries to distinguish *Rosemere* by claiming that the mootness inquiry is case-specific and that "the record in this case necessarily differs from *Rosemere* . . . [because] the plans that [Rosemere Neighborhood Association] stated with respect to future Title VI administrative complaints differ significantly from Plaintiffs' statements." EPA Br. at 14:11-14. EPA refers to the Declaration of Maricela Mares-Alatorre, a member of Plaintiff El Pueblo para el Aire y Agua Limpio, who earlier in this litigation testified that El Pueblo may file another Title VI complaint against the California Department of Toxic Substances Control, should that agency issue the operating permit that allows expansion of the Kettleman Hills toxic waste dump, located near Kettleman City in Kings County. Declaration of Maricela Mares-Alattorre ¶ 3 (Doc. 31). Mares-Alatorre also testified that this subsequent Title VI complaint may involve similar allegations of the same pattern and practice of discrimination as are alleged in the Title VI complaint at issue in this case, in addition to new allegations that the Department may issue the permit in reliance on Kings County's discriminatory environmental review process, where Spanish-speakers received half the time for public comment as English-speakers. *Id.* ¶ 4. Furthermore, Mares-Alatorre testified that El Pueblo needs to know whether EPA can be held to account for unlawful delays in order to determine whether El Pueblo should invest its limited resources in advocating for its members' civil rights through Title VI of the Civil Rights Act. *Id.*[2]

However, EPA yet again ignores *Rosemere*. While the *Rosemere* Court held that the voluntary compliance exception to the mootness doctrine applied, the Ninth Circuit also held that EPA must demonstrate that the case is moot. *Rosemere*, 581 F.3d at 1173. The burden

---

[2] Mares-Alatorre cannot reasonably testify that El Pueblo will, without question, file another Title VI complaint because the Department has neither proposed nor made a final decision to grant or deny the new operating permit for the Kettleman Hills toxic waste dump expansion. Declaration of Brent Newell, ¶ 3. The Department has authority to deny the operating permit based on "violation[s] of, or noncompliance with" any related environmental protection statutes and regulations if "the violation[s] or noncompliance shows a repeating or recurring pattern or may pose a threat to public health or safety or the environment." Cal. Health & Safety Code § 25186.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON MOOTNESS GROUNDS          7

does not rest on Padres to demonstrate that it will, without question, file subsequent Title VI complaints. Instead, EPA must either show that it is extremely unlikely that Padres will file another complaint or that EPA will comply with its deadlines when it processes a future complaint. *Id*. EPA has made no effort whatsoever to demonstrate that it is extremely unlikely that the Department of Toxic Substances Control will issue the operating permit (and thus render a future Title VI complaint unnecessary) or that EPA has corrected its pattern and practice of failing to implement and enforce Title VI of the Civil Rights Act. As the Ninth Circuit held, "EPA cannot meet this burden solely by claiming that [a plaintiff] has not done enough to show the likelihood of further delays." *Id*. at 1173, *citing FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999). The supposed differences between the facts in *Rosemere* and the facts of this case are therefore legally irrelevant because the burden rests on EPA, which has failed to offer any factual information of its own.

EPA's failure to address its burden of proof is especially troubling because the *Rosemere* Court held that EPA had engaged in a pattern and practice of delay.

> Finally, we note that Rosemere's experience before the EPA appears, sadly and unfortunately, typical of those who appeal to OCR to remedy civil rights violations. As indicated earlier, discovery has shown that the EPA failed to process a single complaint from 2006 or 2007 in accordance with its regulatory deadlines. *Amicus* the Center on Race, Poverty & the Environment has helpfully provided further examples of such delay. This pattern of delay as shown by the experiences of other parties before an agency can be relevant to the mootness analysis*, see Biodiversity*, 309 F.3d at 1174, and helps convince us that this action should go forward. *See also In re Ctr. for Auto Safety*, 793 F.2d 1346, 1352 (D.C. Cir. 1986) (holding that agency's "pattern of delay in violation of the unambiguous statutory command" was sufficient for the voluntary cessation exception to apply, notwithstanding the agency's "bald assertion" of future timeliness).

*Rosemere*, 581 F.3d at 1175. EPA has not made any argument to this Court that EPA has addressed the underlying problems in its administration of Title VI of the Civil Rights Act.

EPA's behavior in this case demonstrates that the same problems still plague the agency. After Padres initiated this action, it still took EPA over 14 months to make its

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON MOOTNESS GROUNDS       8

decision to dismiss Padres' Title VI complaint even though the agency's own regulations require it to make a preliminary finding within 6 months of accepting the complaint for investigation. 40 C.F.R. § 7.115(c)(1). The pattern and practice of delay is still very much in place at EPA.

EPA's own consultants have recently identified EPA's institutional incapacity to implement and enforce Title VI of the Civil Rights Act. On March 21, 2011, Deloitte Consulting, LLP released a report that evaluated the effectiveness of the Office of Civil Rights' handling of Title VI Complaints entitled EVALUATION OF THE EPA OFFICE OF CIVIL RIGHTS (hereafter "Deloitte Report"). Complaint ¶ 45; Declaration of Brent Newell, Exh. 1. The Deloitte Report found that the OCR "has not adequately adjudicated Title VI complaints." Newell Decl. Exh. 1 at 1. It also found that numerous Title VI cases were delayed several years and that EPA's own staff "viewed [OCR] as an organization that performs poorly." *Id.* at 2. According to Deloitte, these "challenges are attributable to OCR's difficulty in building a staff with the qualifications, knowledge and training to effectively complete its mission-related work, much of which is technical and complex" and "the absence of the rudiments of organizational infrastructure – well-documented policies and procedures, standardized processes, and effective systems." *Id*. at 1. Deloitte also found that "OCR staff lack the competencies and skills to get their job done effectively." *Id*. at 16. According to EPA employees, "major delays result primarily from the complexity of determining whether cases fall within [EPA's] jurisdiction" and "a lack of scientific methods to conduct needed analyses." *Id*. at 25.

Finally, Deloitte observed that:

> From 1993 to October 2010, OCR has received 247 Title VI complaints, according to the complaint tracking log provided to Deloitte. The tracking file notes the month and year the complaint is received and the month and year the complaint is accepted or closed. Only 6%, or 15 out of 247, were moved to either accepted or rejected within [sic] 1-month period, in alignment to the EPA targeted 20 day timeframe for acknowledgement. In fact, half of the complaints have taken one year or more to move to accepted or dismissed status.

> The staff and management interviews indicated a core challenge with Title VI is the complexity of each case with complicated investigation plans often requiring health impact modeling as reflected in the investigation plan examples provided to Deloitte.  The Title VI complaint backlog was directly attributable to OCR's difficulty in securing the time of [*sic*] the resources in the program and regional offices that have the required technical and regulatory expertise to execute the highly analytical investigation plan.

*Id*. at 19 (internal footnotes omitted).

Based on the weight of this evidence, it would be nearly impossible for EPA to demonstrate that it has corrected the pattern and practice of delay and similar violations in its civil rights program.  Nor has EPA made any attempt to do so, because the same problems that have plagued the agency for almost twenty years continue to cripple its ability to implement Title VI of the Civil Rights Act in a lawful and orderly manner.  Instead of defending its administration of the Title VI program, EPA ignores the Ninth Circuit's holding in *Rosemere* and revisits its failed effort to shift the burden back to the plaintiffs by focusing on their request for prospective relief.  That tactic has been rejected once by the Ninth Circuit and it should be rejected for a second time by this court.  Plaintiffs respectfully submit that EPA's motion to dismiss is frivolous because it ignores EPA's clear burden under Ninth Circuit precedent.

### B.     Padres' Claim for Declaratory Relief is not Moot.

Having failed to make any effort to meet its burden to demonstrate mootness under *Rosemere*, EPA nevertheless argues that declaratory relief is unavailable for moot claims. EPA Br. at 10:26 to 11:15.  EPA cites *Public Utilities Commission of California v. F.E.R.C.*, 100 F.3d 1451 (9th Cir. 1989), *Native Village of Noatak v. Blatchford*, 38 F.3d 1505 (9th Cir. 1994), and *Headwaters v. Bureau of Land Management,* 893 F.2d 1012, 1015 (9th Cir. 1989) all for the unremarkable proposition that declaratory relief is not available for moot claims. In *Public Utilities Commission* and *Native Village of Noatak*, the Ninth Circuit held that the voluntary cessation exception to the mootness doctrine did not apply.   *Public Utilities Commission*, 100 F.3d at 1460; *Native Village of Noatak*, 38 F.3d at 1510-1511.   Because EPA has made no effort to demonstrate mootness pursuant to *Rosemere*, declaratory relief

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON MOOTNESS GROUNDS            10

remains.

Unlike the moot claim for declaratory relief in *Headwaters* which challenged the approval of timber sales which had already been harvested, 893 F.2d at 1015, Padres challenges EPA's *inaction* on its seventeen year old Title VI complaint, which is part of a much larger and *uncontested* pattern and practice of EPA malfeasance.  EPA's failure to implement and enforce Title VI has neither evaporated nor disappeared, and casts a substantial adverse effect on Padres' interests, especially given Padres' concern regarding additional violations of their civil rights, EPA's pattern and practice of delay, and Padres' intent to file another Title VI complaint.  *Cf Headwaters*, 893 F.2d at 1015.  Accordingly, Padres claim for declaratory relief is not moot.  Furthermore, *Headwaters* is inapposite because *Rosemere* controls the question of whether EPA's voluntary cessation moots Padres' claim for declaratory relief.   EPA's systemic failure underscores the propriety of declaratory relief notwithstanding EPA's recent action on the complaint.  *Rosemere*, 581 F.3d at 1175 (the delay Rosemere Neighborhood Association experienced is "sadly and unfortunately, typical of those who appeal to [EPA] to remedy civil rights violations" that "begs for an exception to the ordinary rules of mootness").  Accordingly, EPA has not met its heavy burden to demonstrate that this case is moot and declaratory relief remains an appropriate remedy.

## VI.     PADRES' CLAIM FOR PROSPECTIVE INJUNCTIVE RELIEF IS RIPE.

In addition to ignoring its own wrongful conduct, EPA also argues that Plaintiffs' claim for prospective injunctive relief is not ripe for adjudication.  EPA Br. at 8-10.  Once again, this court has no need to look further than the Ninth Circuit's decision in *Rosemere* in rejecting EPA's efforts to avoid judicial review of its pattern of unlawful delay.  The Ninth Circuit already reviewed EPA's arguments on ripeness and concluded that they are "without merit, for several reasons."  *Rosemere*, 581 F.3d at 1175 n.4.

Ripeness turns on the question of whether "the plaintiff faces a realistic danger of sustaining 'direct injury' from the challenged act . . . and on the prudential considerations of whether the issue is fit for decision and whether the parties will suffer hardship if the court

1  declines to consider it." *Chang v. U.S.*, 327 F.3d 911, 921 (9th Cir. 2003) (internal citations
2  omitted).

3        The Ninth Circuit summarily rejected EPA's ripeness argument in *Rosemere* for three
4  reasons.  First, the court found that Rosemere faced likely future delays at the hands of EPA
5  and was therefore faced with the threat of direct injury.  *Rosemere*, 581 F.3d at 1174 n.4.
6  Second, the Ninth Circuit noted that the record developed through discovery documented
7  EPA's pattern of delay and therefore further factual development was not needed.  *Id*., *citing*
8  *Chang*, 327 F.3d at 922.  Third, the Ninth Circuit found that Rosemere faced hardship in the
9  absence of a ruling because it would not know whether EPA would act on its future Title VI
10 complaint.  *Id*.

11       As discussed above, the facts of this case are almost identical to those in *Rosemere*.
12 Here too, Padres sought redress for violations of Title VI of the Civil Rights Act, turned to
13 EPA for assistance, and EPA withheld that assistance by ignoring Padres' administrative
14 complaint until forced to do so under the specter of a federal lawsuit.  Just as in *Rosemere*,
15 Padres are concerned about ongoing discrimination and have submitted a declaration
16 documenting their strong interest in utilizing Title VI in the future to address violations of
17 their civil rights.  *See* Declaration of Maricela Mares-Alattorre (Doc. 31).

18       EPA, however, attempts to distinguish *Rosemere* by arguing that the plaintiff in that
19 case had already developed its future Title VI complaint and "all that remained was for it to
20 submit [that] complaint to EPA."  EPA Br. at 10:1-2.  In effect, EPA argues that a plaintiff
21 must be poised on the doorstep of EPA with a new Title VI complaint in hand before a claim
22 for prospective relief, based on a pattern of delay lasting at least seventeen years, would be
23 ripe for adjudication by a court.

24       This attempt at hair-splitting flouts the holding of *Rosemere*.  First, the Ninth Circuit
25 held that plaintiff need only show a "realistic danger" of sustaining injury from the agency's
26 disregard of the law.  581 F.3d at 1175 n.4.  Nothing in the opinion can be read as creating
27 the type of narrow, restrictive test EPA proffers whereby Padres must have the future
28 complaint in hand ready to deliver to the agency.  This is particularly so where the agency

has a well-documented, uncontested pattern and practice of delay.

Moreover, as a practical matter, EPA's argument, if adopted by the court, would undermine entirely the Ninth Circuit's holding on the hardship that a plaintiff would suffer in the absence of a ruling on the legality of the challenged conduct. As the unanimous panel noted, Rosemere would not know how to direct its limited resources "until it knows whether OCR will act promptly on its complaints." *Id.*, *citing Chang*, 327 F.3d at 922. EPA's argument here, however, is that Padres must be poised to file their future Title VI complaint before their claim for prospective relief is ripe. According to EPA, Padres would have to wait until *after* they suffered further discrimination and *after* Padres invested their limited resources in developing a Title VI complaint without any clarity or assurance that EPA would act on that complaint in a timely manner. This is precisely the hardship that the Ninth Circuit addressed in *Rosemere* in holding that a plaintiff's claims for prospective relief are ripe once it has already been subjected to EPA's pattern and practice of unlawful delay. *Id*. Padres should not be forced to suffer further violations of their civil rights before their claims for prospective relief are ripe for judicial review.

## VII. PADRES HAS STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF.

Padres has standing because it has alleged the likelihood of similar violations in the future and that an order requiring EPA compliance with its regulations would remedy Padres' injuries. EPA challenges Padres' standing to seek prospective injunctive relief by arguing that Padres has not asserted a concrete and particularized injury caused by EPA's failure to correctly process future complaints. EPA Br. at 7:20-22.

To the contrary, Padres has properly pled facts that satisfy the constitutional minimum standing requirements consisting of (1) an injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage "general factual allegations of injury resulting from the defendant's conduct may suffice," for on a motion to dismiss the court must "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. at 561, *quoting*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).

"To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Manuel de Jesus Ortega Melendres v. Arpaio*, 2012 U.S. App. LEXIS 20120 at *12 (9th Cir. Sept. 25, 2012) (held that plaintiffs had standing for prospective injunctive relief when future injury was "sufficiently likely" given the Defendants' policy and practice of Fourth Amendment violations), *quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). "At a minimum, *Lyons* requires that the 'personal stake' showing necessary under Article III in cases involving injunctive relief includes an essential showing of the likelihood of similar injury in the future." *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985).

Padres alleges that "EPA's failure to comply with its own regulations for processing Title VI complaints is part of a pattern and practice whereby EPA consistently (1) fails to timely accept, reject or refer complaints; and (2) fails to timely issue preliminary findings as required by the regulations in 40 C.F.R. Part 7." Complaint ¶ 5 (Doc. 1). Padres further alleges that "EPA has consistently and overwhelmingly failed to accept, reject, or refer Title VI complaints within 20 days and consistently and overwhelmingly failed to issue preliminary findings and recommendations for voluntary compliance within 180 days, as required by 40 C.F.R. §§ 7.120(d)(1)(i) and 7.115(c)." *Id*. at ¶ 51. Padres substantiated those allegations with specific allegations of EPA's malfeasance as documented by EPA's own consultants in the Deloitte Report. *Id*. at ¶ 45; *see also* Deloitte Report, attached to the Newell Decl. as Exh. 1.

Padres alleges that it "has an ongoing interest in protection against discrimination by the California Department of Toxic Substances Control and other state and local governmental agencies that receive and distribute federal funding." *Id*. at ¶ 14. Padres further alleges that "Chemical Waste Management has received approval from Kings County and the San Joaquin Valley Air Pollution Control District to significantly expand the Kettleman Hills Facility's capacity to accept more toxic waste. The California Department of Toxic Substances Control is currently processing the permit application to allow this

1  expansion." *Id.*

2    Padres has sufficiently alleged the likelihood of similar violations in the future and
3  thus has standing for prospective injunctive relief.  Padres alleges that it has an interest in
4  protecting its members from discrimination by the Department of Toxic Substances Control,
5  and has alleged that the Department is currently processing the permit to allow a significant
6  expansion of toxic waste dumping at the Kettleman Hills facility, and expansion already
7  approved by Kings County and the San Joaquin Valley Air Pollution Control District.  *Id.* at
8  ¶¶ 14, 16.  Padres also alleges that EPA is engaged in a pattern and practice of failing to
9  timely process Title VI complaints.  Complaint ¶¶ 5, 45, 51.  Based on these allegations,
10 which the court must assume to be true at this stage of the proceedings, it is thus sufficiently
11 likely that Padres will file another Title VI complaint related to the expansion of the
12 Kettleman Hills facility and that Padres will encounter the same delay.

13   Finally, the Court should reject EPA's contention that prospective injunctive relief
14 would not redress Padres' injuries because future action would not remedy past delay.  EPA
15 Br. at 8:5-13.  However, Padres does not seek prospective injunctive relief to remedy past
16 delay.  Rather, Padres seeks to protect Padres' ongoing interest in protection against
17 discrimination by the Department of Toxic Substances Control in the process to authorize the
18 expansion of the Kettleman Hills facility.  Complaint at ¶¶ 14, 17.  Prospective injunctive
19 relief would thus redress the likelihood of similar EPA delays in processing Title VI
20 complaints that Padres may file in the future.

21 **VIII.  CONCLUSION.**

22   For the reasons stated above, the Court should deny the Motion.

23 Dated:  November 5, 2012                    Respectfully submitted,
                                               CENTER ON RACE, POVERTY & THE
24                                             ENVIRONMENT

25                                             /s/ Brent Newell
26                                             Brent Newell
                                               Attorney for Plaintiffs
27                                             Padres Hacia una Vida Mejor, *et al.*

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON MOOTNESS GROUNDS         15

1
2
3
4

CRAG LAW CENTER

/s/ Christopher Winter
Christopher Winter
Attorney for Plaintiffs
Padres Hacia una Vida Mejor, *et al*.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28