IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PADRES HACIA UNA VIDA MEJOR,** an unincorporated association, and **EL PUEBLO PARA EL AIRE Y AGUA LIMPIO,** an unincorporated association,<br><br>Plaintiffs,<br>v.<br><br>**LISA P. JACKSON,** in her official capacity as Administrator of the U.S. Environmental Protection Agency, and **U.S. ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Defendants. | 1:11-cv-1094 AWI BAM<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 42) |

This is a case brought by Plaintiffs under 5 U.S.C. § 706(1) (hereinafter "§ 706(1)") of the Administrative Procedures Act ("APA"). Plaintiffs contend that Defendants have failed to act on a Title VI complaint of discrimination that was filed in 1994. However, on August 30, 2012, Defendants finally issued a letter of dismissal on Plaintiffs' Title VI complaint, which permanently closed the matter. Defendants now move under Rule 12(b)(1) to dismiss this case in light of the Title VI dismissal. The Court ordered additional briefing on several issues, including whether the Court can grant Plaintiffs their requested prospective relief under § 706(1), whether declaratory relief would be "effective" in this case if the requested prospective relief is unavailable, and whether the work done on the now complete Title VI complaint would make it unlikely that Plaintiffs would suffer material delays if they choose to file a second Title VI complaint. See Doc. No. 57. Having received the briefing from the parties, the Court will grant Defendants' motion.

**GENERAL BACKGROUND**

From the Complaint, Plaintiffs are associations whose members reside in Buttonwillow and Kettleman City, California. The populations of Buttonwillow and Kettleman City are majority Latino, and a substantial portion of the populations of these cities are below the poverty line. Two of California's Class I toxic waste disposal sites are located in these cities. The United States Environmental Protection Agency ("EPA") has distributed federal financial assistance to ten California agencies ("10 Agencies"). The 10 Agencies are responsible for the permitting and oversight of the Class I toxic waste disposal dumps in Buttonwillow and Kettleman City. Of particular relevance to this case is the dump in Kettleman City, which is the Kettleman Hills toxic waste dump.

On December 12, 1994, Plaintiffs filed with the EPA's Office of Civil Rights ("OCR") a Title VI discrimination complaint against the 10 Agencies and the owners of the two toxic waste disposal dumps (hereinafter the "Owners"). The Title VI complaint alleges that the Owners and the 10 Agencies discriminated against Plaintiffs in the siting, permitting, expansion, and operation of the toxic waste dumps.

On July 18, 1995, EPA notified Plaintiffs that it had accepted their Title VI complaint for investigation.

On October 14, 1996, Plaintiffs sent a letter to then EPA Administrator, Carol Browner. The letter raised the issue of EPA's failure to adhere to regulatory deadlines in processing Title VI complaints. The letter indicated that EPA had missed the relevant deadline by eight months, and warned that Plaintiffs were aware of their remedies under 5 U.S.C. § 706.

On December 9, 1996, EPA responded to the October 1996 letter. EPA agreed that it needed to improve the timeliness of its decisional process, and informed Plaintiffs that it had taken steps to enhance the investigation and processing of Title VI complaints so as to address the concerns raised in the letter.

On August 26, 2000, Plaintiffs and other Title VI complainants submitted comments on the EPA's Draft Revised Guidance for Investigating Title VI Administrative Complaints.

Between 2006 and 2007, EPA failed to process a single Title VI complaint in accordance

with its regulatory guidelines.

On March 21, 2011, Deloitte Consulting released a final report (the "Deloitte Report") that evaluated the EPA's Office of Civil Rights. The Deloitte Report found that EPA had not adequately adjudicated Title VI complaints.

On June 30, 2011, Plaintiffs filed this lawsuit. The Complaint contains a single cause of action under 5 U.S.C. § 706(1). Plaintiffs allege that EPA has violated, and continues to violate, 40 C.F.R. § 7.115(c)(1)[1] (hereinafter § 7.115 or § 7.115(c)) because it failed to issue preliminary findings and recommendations for voluntary compliance in response to Plaintiffs' Title VI complaint within 180 days of EPA's initiation of investigation. Plaintiffs seeks declaratory and injunctive relief so that EPA will comply with § 7.115.

On August 30, 2012, Defendants finally completed their regulatory duties and issued a letter of dismissal of Plaintiffs' Title VI claim. See Doc. No. 41. With that letter of dismissal, Plaintiffs' Title VI complaint, filed over 17 years ago, is now permanently closed. See id.

## LEGAL FRAMEWORK

Federal Rules of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). It is a fundamental precept that federal courts are courts of limited jurisdiction. Vacek v. United States Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006). "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek, 447 F.3d at 1250. Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d

---

[1] 40 C.F.R. § 7.115(c)(1) reads:
(c) Postreview notice. (1) Within 180 calendar days from the start of the compliance review or complaint investigation, the OCR will notify the recipient in writing by certified mail, return receipt requested, of: (i) Preliminary findings; (ii) Recommendations, if any, for achieving voluntary compliance; and (iii) Recipient's right to engage in voluntary compliance negotiations where appropriate.

1036, 1040 n.2 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. See Wolfe, 392 F.3d at 362; see also Meyer, 373 F.3d at 1039. When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Meyer, 373 F.3d at 1039; Savage, 343 F.3d at 1039 n.2. The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. Meyer, 373 F.3d at 1039; White, 227 F.3d at 1242.

**DEFENDANTS' MOTION**

*Defendants' Arguments*

Defendants argue that dismissal is appropriate for several reasons.

First, the sole remedy for a violation of § 706(1) is to compel the agency's action that has been unlawfully withheld or unreasonably delayed. Plaintiffs' requested prospective injunction would override statutory limitations and would provide relief where no duty has been ignored.

Second, Plaintiffs' lack standing to obtain prospective relief. Plaintiffs have not asserted a concrete and particularized injury caused by the agency's alleged failure to correctly process future complaints. Such a claim would by hypothetical, speculative, and constitute a possible future injury. Further, the prospective relief would not redress the single injury that Plaintiffs have asserted in this case for failure to follow § 7.115.

Third, Plaintiffs' claim for prospective relief is unripe. One of Plaintiffs' members has indicated that Plaintiffs may file a Title VI complaint with EPA based on the possibility that the California Department of Toxic Substances Control ("DTSC") might at some unknown future date permit the expansion of the Kettleman Hills facility. However, the approval of an expansion permit is a contingent event, and Plaintiffs indicate that they only "may" file suit if an expansion occurs.

Fourth, with the resolution of Plaintiffs' Title VI complaint, no effective relief is

available to Plaintiffs. Any judicial order to complete the Title VI investigation is superfluous. Further, the declaratory relief requested does not survive. With the completion of the investigation, there are no longer any substantial adverse effects on any interests of the parties.

In their original reply brief, Defendants also argued that substantial work was performed in completing Plaintiffs' Title VI complaint, including work related specifically to Kettleman Hills. The work performed was time consuming, and would be relevant to a future Title VI claim if Plaintiffs file their described future complaint. The completed work would decrease the time it would take to act on a Title VI claim regarding Kettleman Hills expansion. Further, Defendants argue that substantial improvements have occurred in the processing of Title VI complaints.

Finally, as part of their supplemental briefing, Defendants *inter alia* again argued that there are standing and ripeness problems with the injunctive relief requested. Defendants also reiterate that declaratory relief is no longer available because EPA's past action in delaying lacks any continuing effect, and declaratory relief would not affect the matter before the court.

*Plaintiffs' Opposition*

Plaintiffs argue that this case is controlled by *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169 (9th Cir. 2009) and that Defendants have failed to meet their heavy burden of showing mootness. Per *Rosemere*, Defendants must show that Plaintiffs will not encounter further regulatory delays in the process of its complaints by showing that it is extremely unlikely that Plaintiffs will file another complaint or that Defendants will meet their regulatory deadlines in resolving future complaints. Defendants have not met either of these criteria.

With respect to ripeness, for similar reasons expressed in *Rosemere*, there is no ripeness problem. Like the litigants in *Rosemere*, Plaintiffs are concerned about on-going discrimination and the Mares-Alatorre declaration shows a strong interest in utilizing Title VI in the future to address civil rights violations. The Mares-Alatorre declaration shows an interest in filing a new complaint against DTSC regarding expansion of the Kettleman Hills dump. Contrary to Defendants' arguments, Plaintiffs do not need to be at the doorstep with a new Title VI complaint for their claim to be ripe. Further, the Defendants' conduct in this case leaves questions about how Plaintiffs should direct their limited resources for future complaints.

With respect to standing, Plaintiffs argue that they have alleged the likelihood of similar violations by Defendants in the future and that prospective relief would cure the delays. Given that it is sufficiently likely that Padres will file another Title VI complaint, the facts of this case, and the Defendants' pattern of unreasonable delay, standing has been sufficiently demonstrated.

Finally, as part of the supplemental briefing, Plaintiffs argue *inter alia* that declaratory relief is still effective. EPA has denied that it has a non-discretionary duty to act on Plaintiffs' Title VI complaint within 180 days of accepting the complaint. A declaration that EPA owes a duty to Padres to act within 180 days and that EPA violated that duty would resolve the current controversy between the parties and would also provide a significant benefit to Plaintiffs if they file another Title VI complaint. The Court should declare whether EPA is under a non-discretionary duty under § 7.115. Such a declaration would preclude EPA from arguing that it has no legal duty to act and would prevent EPA from avoiding accountability by repeatedly mooting each unlawful delay claim before final judgment is reached. Plaintiffs also argue that Defendants have not shown mootness under *Rosemere*. The DeLeon declaration shows that many of the changes the Defendants describe are not final, and that, despite the 180 day deadline set by § 7.115 to make preliminary findings, the median time for that deadline (after September 2009) is 321.5 days. Further, the data produced shows a significant backlog of cases. Also, the work that was done on this case does not include many additional items/tasks that would be necessary for the future complaint identified by Mares-Alatorre.

*Discussion*

1. Injunctive Relief Regarding Plaintiffs' Future Title VI Complaints

There appears to be no dispute that Plaintiffs' claim for an injunction ordering Defendants to presently act on Plaintiffs' Title VI complaint is now moot because Defendants have resolved the complaint. The Court will not order Defendants to do the same act twice. See Center for Biological Diversity v. Lohn, 511 F.3d 960, 963 (9th Cir. 2007); In re American Federation of Government Employees, 837 F.2d 503, 505 (D.C. Cir. 1988). The injunctive relief that is now at issue is Plaintiffs' prayer for an injunction that would require Defendants to meet § 7.115(c)'s 180-day deadline in all future Title VI complaints that Plaintiffs may file. See

Complaint Prayer ¶ B. Such an injunction is not appropriate in this case.

"Article III standing requires the plaintiff to establish standing for each challenge he wishes to bring and each form of relief he seeks." Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 771 (9th Cir. 2006); see also Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000). Standing requires a showing of, among other things, "an injury in fact that is concrete and particularized." Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009). The "injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus." Schmier v. United States Court of Appeals, 279 F.3d 817, 821 (9th Cir. 2002). For injunctive relief, a plaintiff must show in part "that he is under threat of suffering 'injury in fact' that is concrete and particularized [and] the threat must be actual and imminent, not conjectural or hypothetical." Summers, 555 U.S. at 493; Friends of the Earth, 528 U.S. at 180; Pacific Rivers Council v. United States Forest Serv., 689 F.3d 1012, 1021 (9th Cir. 2012). A plaintiff must make an "individualized showing that there is a very significant possibility that the future harm will ensue." Lee v. Oregon, 107 F.3d 1382, 1388-89 (9th Cir. 1997); Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir. 1990). "'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of [an] 'actual or imminent' injury . . . ." Summers, 555 U.S. 496; Wilderness Soc'y, Inc. v. Rey, 622 F.3d 1251, 1255 (9th Cir. 2010). The court's assessment must take into account all contingencies that may arise in an individual case before future harm will ensue. See Nelsen, 895 F.2d at 1251. Additionally, "in many cases, ripeness coincides squarely with standing's injury in fact prong." Bova, 564 F.3d 1093, 1095-96 (9th Cir. 2009); Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998); Bova, 564 F.3d at 1096. "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." Alcoa, Inc. v. Bonneville Power Admin., 698 F.3d 774,

793 (9th Cir. 2012); Bova, 564 F.3d at 1096.  However, "a litigant need not await the consumation of threatened injury to obtain preventive relief," rather "[i]f the injury is certainly impending, that is enough."  Addington v. U.S. Airline Pilots Ass'n, 606 F.3d 1174, 1179-80 (9th Cir. 2010); 18 Unnamed "John Smith" Prisoners v. Meese, 871 F.2d 881, 883 (9th Cir. 1989).  The burden of establishing ripeness and standing rests on the party asserting jurisdiction.  See Colwell v. HHS, 558 F.3d 1112, 1121 (9th Cir. 2009).

Here, § 7.115 does not apply until a Title VI complaint is filed and accepted with OCR.  Thus, any injury relating to § 7.115 depends largely upon the likelihood of Plaintiffs filing another Title VI complaint.  The only evidence presented that relates to a future Title VI complaint is the opposition declaration of Maricela Mares-Alatorre, who is a member of Plaintiff El Pueblo para el Aire y Agua Limpio.  Mares-Alatorre declares in pertinent part:

> El Pueblo may file another Title VI complaint against the [DTSC], should that agency issue the operating permit that allows expansion of the Kettleman Hills toxic waste dump, located near Kettleman City.
>
> This additional Title VI complaint may involve similar allegations of the same pattern and practice of discrimination as are alleged in the Title VI complaint at issue in this case, in addition to new allegations that the [DTSC] may issue the operating permit in reliance on Kings County's discriminatory environmental review process, where Spanish-speakers received half the time for public comment as English-speakers.

Mares-Alatorre Dec. ¶¶ 3-4.  The Court finds that Mares-Alatorre's declaration does not show that Plaintiffs are faced with a future violation of § 7.115 that is actual and imminent or certainly impending.

First, the Mares-Alatorre declaration by its own terms does not state that Plaintiffs intend to or certainly plan on filing another Title VI complaint.  The declaration speaks more in possible or hypothetical terms.  Mares-Alatorre only declares that Plaintiffs "may" file another lawsuit.  This is similar to an inadequate "some day intention."  See Summers, 555 U.S. 496.

Second, and critically important, the future Title VI complaint described by Mares-Alatorre would challenge the expansion of the Kettleman Hills toxic waste dump, if expansion actually occurs.  This future Title VI complaint is completely dependent upon DTSC issuing a new operating permit that allows Kettleman Hills to expand.  Plaintiffs have represented that Kings County and the San Joaquin Valley Air Pollution Control District have approved

expansion, but that does not speak to DTSC's approval. Plaintiffs have not shown that DTSC is required to issue a new operating permit that allows for expansion or that DTSC's approval of such a permit is otherwise imminent. Indeed, there is no indication that any decision by DTSC on the new permit will be issued in the near future.[2] It is entirely possible that DTSC may not issue a new permit that allows for expansion. If no new permit is issued, then there will be no expansion. Without expansion of the Kettleman Hills facility, there is no basis for the only future Title VI complaint identified by Plaintiffs. Therefore, the only future Title VI complaint identified by Plaintiffs is clearly "contingent [upon] future events that may not occur as anticipated, or indeed may not occur at all." Texas, 523 U.S. at 300; Bova, 564 F.3d at 1096. The future Title VI complaint is based on a "possible future" event and is hypothetical and speculative. See Summers, 555 U.S. at 493; Schmier, 279 F.3d at 821. Without a Title VI complaint, there is no chance of OCR/EPA missing § 7.115(c)'s deadline as to Plaintiffs.

Third, even if DTSC at some unknown time finally approves a new operating permit that allows expansion of Kettleman Hills, the history of this case and the changes that are being implemented by Defendants further indicate that a violation of § 7.115 is not actual and imminent or certainly impending. Defendants have submitted the declaration of Rafael DeLeon, who is the director of OCR. DeLeon ultimately declares that, "in the event that Plaintiffs file the Title VI complaint described by Ms. Mares-Alatorre, it is unlikely that Plaintiffs will encounter delay in the processing of that complaint." DeLeon Dec. ¶ 32.[3] DeLeon bases this conclusion on the work that OCR performed in resolving Plaintiffs' Title VI complaint and on changes that are occurring at OCR.

With respect to the history of Plaintiffs' now resolved Title VI complaint, DeLeon declares that OCR conducted a comprehensive investigation that resulted in a 148 page

---

[2] The Court notes that Plaintiffs have not indicated when DTSC is expected to make its decision on a new permit. However, it appears that a permit modification was submitted to DTSC in December 2008. See DeLeon Dec. ¶ 23. The fact that the permit application remains pending after 4 years indicates that the matter could continue to be under submission for the foreseeable future.

[3] The Court considers DeLeon's declaration as part of the standing and ripeness analyses. The Court expresses no opinion on the issue of the voluntary cessation exception to mootness or how DeLeon's declaration may effect voluntary cessation. Cf. Friends of the Earth, 528 U.S. at 198 (noting evidence that a defendant may resume "harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

9

Investigative Report. See id. at ¶ 21. The investigation included an analysis of potential impacts from: accidental releases of hazardous chemicals, ground and surface water contamination, particulate matter emissions, ozone precursor omissions, and air toxics omissions. See id. at ¶ 22. The investigation also included an analysis of air toxics emissions that would likely arise if the Kettleman Hills dump is expanded. See id. at ¶ 23. OCR found that consideration by DTSC of Environmental Impact Reports by *inter alia* Kings County was not improper despite allegations of deficient public participation. See id. at ¶ 24. OCR found that consideration of the reports was appropriate because the reports were only a part of the many pieces of information considered by DTSC, DTSC did not control the County's public participation process, and DTSC conducted its own public participation process. See id. DeLeon declares that he reviewed the Mares-Alatorre declaration, and that the work that OCR has already performed on Plaintiff's Title VI complaint would substantially reduce the amount of time needed to process a future complaint relating to expansion of the Kettleman Hills dump. See id. at ¶¶ 26-29. Of particular note, DeLeon declares that the types of analyses that were performed in Plaintiffs' resolved Title VI complaint are generally the most burdensome and time consuming. See id. at ¶ 29. DeLeon also declares that the analytic framework developed from the Plaintiffs' prior Title VI complaint may facilitate future analysis. See id. at ¶ 30. Finally, DeLeon declares that the comprehensive investigation resulted in an extensive administrative record relating to Kettleman Hills. See id. at ¶ 31. That extensive record would reduce the time needed to investigate Plaintiffs' future complaint. See id.

With respect to changes at OCR, DeLeon declares that EPA Administrator Lisa Jackson directed EPA staff to review and reform the Title VI process so that complaints would be timely decided. See id. at ¶ 8. Since 2009, OCR staff members have taken numerous training courses relevant to the effective implementation of the Title VI program. See id. at ¶ 20. In November 2009 a Senior Counsel was appointed and remained at OCR for two years. See id. at ¶ 9. The Senior Counsel developed a team approach and focused on resolving pending Title VI complaints and evaluating long-term institutional changes to the Title VI process. See id. In 2010, OCR hired seven additional full time staff. See id. at ¶¶ 10, 11. Also in 2010 a network of

Title VI contracts was developed in order to provide significant technical and environmental assistance and expertise. See id. at ¶ 12. Also in 2010 EPA commissioned the report by Deloitte Consulting, and appointed an executive committee to review the Deloitte report and make recommendations for fundamental improvements. See id. at ¶¶ 14, 15. A group of senior career managers conducted a year long exhaustive review of OCR's Title VI program and provided briefings on priority issues to the executive committee. See id. at ¶ 16. The executive committee issued its final report on April 13, 2012, which was approved by Administrator Jackson. See id. at ¶¶ 17, 18. The report contained three key recommendations for strengthening the Title VI program – establishing a case management protocol, strengthening Title VI compliance and prevention through grant mechanisms, and mobilizing resources from across EPA to resolve Title VI complaints. See id. EPA continues the process of implementing the executive committee's recommendations. See id. DeLeon declares that the on-going changes have resulted in measurable improvement. See id. at ¶ 19. For example, since September 2009, there were 35 open Title VI complaints and 55 new complaints had since been filed, but of those 90 cases, only 27 remain pending. See id. at ¶ 19(a). Of the closed cases, 17 were decided/resolved after substantive efforts and investigations had occurred, whereas only 2 cases had been substantively decided from 2004 to September 2009. See id. at ¶ 19(b). The median processing time for issuing a notification letter has been reduced by nearly 80% since September 2009. See id. at ¶ 19(c). The median time for issuing jurisdictional letters has dropped by nearly 53%. See id. Finally, the median time for investigating and issuing decisions on Title VI complaints is 321.5 days, which is a drop of nearly 54%. See id.

To be sure, the DeLeon declaration has areas of concern. Like Plaintiffs, the Court will read DeLeon's discussion of "investigating and issuing decisions" as pertaining to § 7.115. So reading the declaration, it is apparent that OCR/EPA on a median level is not meeting § 7.115's deadline.[4] 321.5 days to decide a complaint, although a marked improvement from the prior

---

[4] Plaintiffs point out that OCR/EPA is regularly missing 40 C.F.R. § 7.120(d)(1)(i)'s 20 day deadline. However, at the time this lawsuit was filed, OCR/EPA was only presently in violation of 40 C.F.R. § 7.115 as to Plaintiffs. Critically. the declaratory and injunctive relief requested by Plaintiffs relate only to 40 C.F.R. § 7.115. See Complaint at Prayer ¶¶ A, B. Any violations of 40 C.F.R. § 7.120(d)(1)(i) are irrelevant.

11

median of 695 days, is still nearly double the 180 day deadline.  Further, as Plaintiffs rightly point out, in addition to the tasks that were performed in resolving Plaintiffs' prior Title VI complaint, OCR would still have to perform other tasks in evaluating and deciding a complaint dealing with Kettleman Hills expansion.  Also, the DeLeon declaration does not indicate how cases are prioritized or how the 27 other currently pending complaints would impact Plaintiffs' future Title VI complaint.  Finally, it appears that many of the policy reforms identified by DeLeon are only in draft form.

     Despite these areas, the DeLeon declaration remains probative.  The declaration shows that substantial and significant work was performed in resolving Plaintiffs' Title VI complaint, and much of that work would be relevant, helpful, and directly applicable to resolving Plaintiffs' future Title VI complaint.  Since the relevant and applicable work would not have to be done twice, the time it would have taken to do these tasks for the future complaint would be saved.  Given DeLeon's description of the work already performed, the 321.5 day median time would be significantly reduced.  Also, DeLeon's declaration shows that OCR/EPA are hiring staff and continuing to implement and develop changes.  Even if most of the reforms are not in final form, the reduction of currently pending cases and the lowering of median response times indicates that positive results are occurring.  The trend identified from September 2009 to November 2012 is for faster resolution of complaints.  As more time passes, it is more likely that the median resolution time for a Title VI complaint will continue to drop.  There is no time frame suggested as to when DTSC may make a decision on Kettleman Hills expansion or when Plaintiffs' future Title VI complaint may be filed.  Considering the pendency of the application, it does not appear that DTSC will make its decision in the near future.  By the time DTSC does finally decide, and Plaintiffs file their complaint, it is likely that the general median time for resolution will have dropped from 321.5 days.  Finally, that OCR currently has 27 cases pending does not necessarily indicate how many cases will be pending by the time DTSC makes its permitting decision.  The number of pending cases will naturally fluctuate.  Therefore, even considering the limitations of DeLeon's declaration, the combination of the changes that are being made at OCR, the trend of faster resolution times, and especially the work that has already been performed relating to

Kettleman Hills, it does not appear that Plaintiffs are facing an actual and imminent or certainly impending threat of Defendants violating § 7.115(c) in a future Title VI complaint.[5]

Plaintiffs rely largely on *Rosemere Neighborhood Association v. EPA*, 581 F.3d 1169 (9th Cir. 2009). In that case, the Rosemere Association filed two Title VI complaints with OCR and two APA lawsuits against the EPA. See id. at 1171-72. In the second lawsuit, Rosemere Association alleged that "it intended to refile its original Title VI complaint against the City in the near future, with better documentation of the funding nexus between the City and the EPA." Id. at 1172. The Rosemere Association also submitted a declaration from one of its members, who declared that the Association "will likely file another complaint once it is assured of timely processing by EPA . . . ." Id. at 1175. The Ninth Circuit did not address standing, but did address the issue of ripeness. The Ninth Circuit held that Rosemere Association had shown a sufficient likelihood of facing further delays and thus, an injury due to OCR/EPA's failure to follow its own regulatory deadlines. See Rosemere, 581 F.3d at 1175 n.4.

The Court finds *Rosemere* to be distinguishable. In the case at bar, Plaintiffs have expressed a desire to obtain relief so that they are confident that their complaints will be timely resolved and that the EPA will be held to account. See Mares-Alatorre Dec. ¶ 6. However, Plaintiffs have not indicated that they actually intend to file another Title VI complaint or that another Title VI complaint is likely to be filed following judicial action by this Court. Instead, as discussed above, the future Title VI complaint would relate to an expansion of the Kettleman Hills dump. That expansion has not occurred, is dependent upon further administrative activity and approval, and there is no indication that approval of expansion is in any way imminent. If the expansion does not occur, then there will be no Title VI complaint by Plaintiffs, and thus no danger of another violation of § 7.115's deadline. Further, even if expansion does occur, Mares-Alatorre indicates that Plaintiffs "may," not "will" or "likely will," file a Title VI complaint. In

---

[5] Plaintiffs have requested that additional discovery be performed if the Court wishes to entertain the argument that EPA has resolved its pattern of delay. See Doc. No. 60 at 19:15-16. The Court does not believe that additional discovery would be helpful. The Court is not holding that OCR/EPA has resolved its pattern of delay, nor does the Court intend to address whether delays have been definitively cured. DeLeon's declaration on its face shows that delays still occur. Instead, the Court is considering DeLeon's declaration for a limited purpose, as one of several factors in the ripeness and standing analyses. See Nelsen, 895 F.2d at 1251 (requiring an individualized assessment of the facts and contingencies in a particular case).

contrast, the Rosemere Association alleged that it intended to refile a particular complaint in the near future. The future Title VI complaint identified by Plaintiffs has layers of contingency that was simply absent from the future complaint identified by Rosemere Association.

It is Plaintiffs' burden to establish ripeness and to establish standing for each claim of relief. The evidence submitted describes a future Title VI complaint that possibly might be filed if, at some unknown point in the future, a governmental regulatory agency eventually issues a new permit that allows for expansion of the Kettleman Hills dump. The hypothetical and contingent nature of this future Title VI complaint (which is the event that triggers the deadlines of § 7.115), combined with the work that was previously performed by OCR/EPA in resolving Plaintiffs' resolved Title VI complaint and the changes and improvements that are occurring at OCR, demonstrate that Plaintiffs do not face a threat of actual and imminent harm, or of harm that is certainly impending. Plaintiffs' request for an injunction that pertains to all future Title VI complaints that they may file will be dismissed due to lack of standing and/or ripeness.[6] See Summers, 555 U.S. at 493, 496; Texas, 523 U.S. at 300; Addington, 606 F.3d at 1179-80; Bova, 564 F.3d at 1096; Schmier, 279 F.3d at 821; Nelsen, 895 F.2d at 1250-51.

### 2. Plaintiffs' Requested Declaratory Relief

In order to obtain declaratory relief, a plaintiff must show "a very significant possibility of future harm; it is insufficient . . . to demonstrate only past injury." San Diego County. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996). Courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Spencer v. Kemna, 523 U.S. 1, 18 (1998). The guiding principles for declaratory relief are "whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." Natural Resources Defense Council, Inc. v. United States EPA, 966 F.2d 1292, 1299 (9th Cir. 1992).

The allegations in the Complaint show that this lawsuit was filed because Defendants did

---

[6] As noted above, the Court requested and received supplemental briefing from the parties on the issue of whether any courts have held that an injunction requiring compliance in future cases that a plaintiff may file is available under § 706(1). The issue has been fully briefed. Nevertheless, given the Court's standing and ripeness determinations, it is unnecessary to address whether this type of an injunction is available under § 706(1).

14

not issue preliminary findings on Plaintiffs' Title VI complaint, despite § 7.115's deadline. As part of the remedy for this conduct, the Complaint requests the following declaratory relief: "Declare that EPA's failure to comply with the deadline set forth in § 7.115, requiring EPA to issue preliminary findings and recommendations for voluntary compliance to the recipient within180 days of initiating the investigation, constitutes agency action unlawfully withheld and/or unreasonably delayed under the Administrative Procedure Act." Complaint at Prayer ¶ A.

The Court finds this case to be analogous to *In re American Federation of Government Employees*, 837 F.2d 503 (D.C. Cir. 1988). In *American Federation*, labor organizations sought declaratory relief and a writ of mandamus to compel the Federal Labor Relations Authority ("FLRA") to timely process negotiability appeals. In the course of litigation, the FLRA resolved each of the labor organizations' pending appeals. See id. at 505. With respect to declaratory relief, the D.C. Circuit explained:

> . . . a declaration by this Court that FLRA's delays in deciding these appeals violated 5 U.S.C. § 7117(c)(6) and 5 U.S.C. § 555(b) would serve no useful purpose. Obviously such a declaration cannot form the predicate for an order requiring the FLRA to decide the listed negotiability appeals within thirty days, because the appeals have already been decided. Nor can such a declaration form the predicate for an order imposing a six month deadline on future negotiability appeals, because even if FLRA unlawfully delayed decisions on the listed negotiability appeals an injunction imposing a six month deadline would be inappropriate. We therefore decline to render an opinion on the legality of the delays.

Id. Likewise in this case, it does not appear to the Court that granting the requested declaratory relief would serve any useful purpose or provide any effective relief.

With the resolution of Plaintiffs' Title VI complaint, the requested declaration would only be meaningful to the now closed Title VI complaint. For example, an order declaring that Defendants' failure to comply with § 7.115's deadline was unlawful and/or unreasonable under the APA cannot serve as the predicate for a mandatory injunction for Defendants to act on Plaintiffs' Title VI complaint, because that complaint has been completely resolved. Further, assuming without deciding that § 706(1) authorizes injunctive relief with respect to Plaintiffs' future Title VI complaint, the Court has already concluded that Plaintiffs have not adequately shown standing or ripeness so as to be entitled to that prospective relief. Further, merely declaring that Defendants violated § 7.115 with respect to Plaintiffs' previous Title VI complaint

merely speaks to a past event that is unique to that particular Title VI complaint.  It is unknown how the requested declaration would ensure that Defendants obeyed the regulatory deadline in a separate, future Title VI complaint.  Finally, any help that a declaration may be to a hypothetical future APA lawsuit by Plaintiffs against Defendants is non-existent.  Plaintiffs maintain that § 7.115(c)'s 180 day deadline is a firm deadline that is subject to an "unlawfully withheld" analysis, not an "unreasonable delay" analysis.  See Doc. No. 68 at 12:11-17.  The "unlawfully withheld" analysis does not consider the traditional *TRAC* Factors for reasonableness,[7] rather the "unlawfully withheld" analysis is essentially concerned with whether there is or is not compliance with a statutory command.  See Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1177 n.11, 1178 (9th Cir. 2002); Forest Guardians v. Babbitt, 174 F.3d 1178, 1189-91 (10th Cir. 1998).  What occurred in the past would be irrelevant in determining whether to compel Defendants under § 706(1) to presently act.  Moreover, this case documents Defendants' history of delay with respect to Plaintiffs.  Defendants will not be able to contest that it took an astounding 17 years to meet the 180 day deadline in Plaintiffs' prior Title VI complaint, irrespective of any declaration.

      Plaintiffs argue that Defendants have denied that § 7.115 imposes a non-discretionary mandatory deadline that must be met, and that a declaratory judgment would both be effective in future cases and resolve this present controversy.  The Court is not persuaded.  The Complaint shows that the controversy that gave rise to these proceedings was Defendants' failure to act within the 180-day deadline of § 7.115(c), it was not Defendants' interpretation of that regulation.  The Complaint alleged that EPA has a pattern of violating § 7.115(c)'s deadline and that EPA violated and continued to violate § 7.115 by not issuing preliminary findings in Plaintiffs' particular Title VI complaint within 180 days.  See Complaint ¶¶ 49, 51.  Plaintiffs did not allege that Defendants refuse to interpret § 7.115 as creating a non-discretionary mandatory 180 day deadline, nor did they expressly allege that § 7.115 created a non-discretionary

---

[7] In evaluating whether an agency is unreasonably delaying action, the Ninth Circuit analyzes six factors, commonly known as the *TRAC* Factors.  See Brower v. Evans, 257 F.3d 1058, 1068-69 (9th Cir. 2001).  Although not one of the six *TRAC* Factors, a pattern or history of delay may be relevant to *TRAC* Factors 1 and 6, that decisions be governed by a "rule of reason" and the existence of possible bias or impropriety by the agency.

mandatory deadline. In other words, EPA's conduct, not interpretation, was the focus. Similarly, the declaratory relief requested by Plaintiffs is quoted verbatim above. The failure referenced in the prayer is Defendants' failure to comply with § 7.115, it was not a failure to acknowledge a non-discretionary mandatory duty. Plaintiffs did not request the Court to declare that Defendants' interpretation of § 7.115(c) is erroneous or that § 7.115(c) creates a non-discretionary mandatory deadline. Cf. Badgley, 309 F.3d at 1173 (explaining that plaintiff sought a declaration that "that 16 U.S.C. § 1533 requires the Service to make initial listing determinations within twelve months after receiving a petition," which was an attempt "to have the district court declare that the Service's interpretation of 16 U.S.C. § 1533 is erroneous."). Defendants' interpretation of § 7.115(c) was not fairly placed in issue by the Complaint's allegations, nor was Defendants' interpretation of that section the subject of the requested declaratory relief.[8]

In sum, there is no useful purpose that would be served by granting Plaintiffs' requested declaratory relief. Plaintiffs' Title VI complaint has been closed, § 7.115 has no current application to Plaintiffs, Plaintiffs' existing interests are not affected by Defendants' now past conduct, the complaint did not challenge Defendants' interpretation of § 7.115, and the requested declaration cannot serve as the basis of an injunction. Under these circumstances, Plaintiffs' request for declaratory relief will be dismissed. See Spencer, 523 U.S. at 18; San Diego County, 98 F.3d at 1126; Natural Resources, 966 F.2d at 1299; American Federation, 837 F.2d at 505.

## CONCLUSION

After considering the arguments, the Court concludes that injunctive relief to compel Defendants to presently act on Plaintiffs' Title VI complaint is moot. Injunctive relief to compel Defendants to meet § 7.115(c)'s deadline in all future Title VI complaints filed by Plaintiffs is inappropriate because Plaintiffs have not adequately shown standing and/or ripeness for such an injunction. Finally, declaratory relief is not appropriate. Plaintiffs' Title VI complaint has been

---

[8] In this light, the Defendants' denials of liability in their answer and the joint scheduling report are just denials of liability, they are not denials that 40 C.F.R. § 7.115 creates a non-discretionary mandatory deadline.

finally resolved and declaring that Defendants' extraordinary 17 year delay was unlawful would not serve a useful purpose or provide effective relief. Defendants' motion to dismiss will be granted.[9]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED;
2. The Clerk shall CLOSE this case; and
3. All other pending motions are DENIED.

IT IS SO ORDERED.

Dated:   February 4, 2013

_____
SENIOR DISTRICT JUDGE

---

[9] The Court is sympathetic to Plaintiffs. It is true that Plaintiffs were aware of § 706(1) in 1996 and could have compelled action much sooner, but 17 years to resolve a Title VI complaint is simply deplorable. If Plaintiffs are concerned that Defendants are free to ignore deadlines, that is not so. Section 706(1) provides the remedy to compel present action. For cases involving conduct that is alleged to be "unlawfully withheld," a Rule 12(c) motion for judgment on the pleadings may permit Plaintiffs to obtain relief in a quicker fashion.